**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Shah Mohammed NIKZAD,
Defendant-Appellant.**

No. 83–5221.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 6, 1984.

Decided Aug. 7, 1984.

Carolyn Turchin, Asst. U.S. Atty., Los Angeles, Cal., for defendant-appellant.

Richard D. Burda, Los Angeles, Cal., for plaintiff-appellee.

Before CHAMBERS, SNEED and BOO-CHEVER, Circuit Judges.

BOOCHEVER, Circuit Judge.

Shah Mohammed Nikzad appeals a conviction under 21 U.S.C. § 841(a)(1) of possession of heroin with intent to distribute. The issue on appeal is whether the district court properly refused to suppress the heroin on the ground that Nikzad abandoned his privacy interest in a briefcase in which the heroin was found. Before adjudicating that issue, we find it necessary to remand the case for a determination of whether Nikzad freely consented to the search of the luggage in which the briefcase was discovered.

## FACTS

On June 1, 1983, Nikzad arrived at Los Angeles International Airport on a flight from New York. Two police officers and a Drug Enforcement Administration (DEA) agent noticed that while proceeding to the baggage claim area, Nikzad nervously kept looking back at them. In the baggage claim area Nikzad continually shifted his weight from foot to foot and walked back and forth. At one point he stared at the officers, but avoided eye contact and moved out of view when one agent returned the stare.

Because of his nervous behavior, the police decided to approach Nikzad outside the terminal. DEA Agent Marcello and one officer, Detective Baker, identified themselves and asked if Nikzad would mind speaking with them. The officers told Nikzad he did not have to speak with them, and that he was free to leave. Nikzad agreed to speak with the agents.

Detective Baker asked to see Nikzad's identification, and he showed the agents his resident alien card and airline ticket. Baker noted that Nikzad's luggage identification tags contained different names, and he requested permission to search the luggage. Again, Detective Baker told Nikzad that he did not have to consent to the search. Nikzad told the officer, "No, it's okay, go ahead." As Nikzad began to open his suitcase, Detective Baker asked if he could open the suitcase himself. Nikzad again agreed.

Within the suitcase police discovered a locked briefcase. In response to Detective Baker's questions, Nikzad stated that he did not know the combination to the lock, that the briefcase belonged to a friend, but that the police could open it if they wished. Detective Baker replied that he did not want to break open the briefcase, and asked permission to expose it to a police dog trained to detect narcotics. Nikzad agreed to the narcotics dog's examination. Detective Baker explained that the dog was in a nearby office, that Nikzad did not have to go to the office if he did not want to and that he was free to leave. Nikzad agreed to accompany the agents to their office for the examination.

On the way to the police office, Nikzad suddenly attempted to run away. The agents caught him, handcuffed him and continued to the office. In the office, the agents exposed the luggage to two narcotics dogs. Both dogs indicated the presence of narcotics within the briefcase.

Agent Marcello advised Nikzad of the dogs' reactions and read him his *Miranda* rights. Nikzad agreed to speak with Marcello without an attorney. He admitted the briefcase was his, but said he had obtained the briefcase earlier that day in New York City from a man who offered to pay Nikzad $10,000 to transport narcotics to Los Angeles.

Agent Marcello gave Nikzad a DEA Consent to Search form and asked him to read it. Nikzad appeared to do so. Marcello then read the form aloud to Nikzad, and asked after each line if Nikzad had any questions. Nikzad indicated he had none. At the conclusion, Marcello asked Nikzad to sign the form if he understood it and agreed to its contents. Nikzad stated that he understood and agreed to sign the form. The agents then opened the briefcase and found ten clear plastic bags containing a quantity of white powder subsequently identified as 1,341.4 grams of heroin.

### A. Nikzad's Consent to Speak With the Agents

Nikzad moved to suppress the heroin at trial. The district court held that Nikzad did not freely consent to speak with the agents outside the terminal because, despite the agents' explicit assurances, Nikzad did not understand he was free to leave. The court based its ruling in part on its observations of Nikzad's inadequate command of the English language. The court nevertheless denied the motion to suppress, holding that Nikzad abandoned his privacy interest in the briefcase by disclaiming ownership of it during his initial conversation with police. *See, e.g., United States v. Veatch,* 647 F.2d 995, 998–99 (9th Cir.), *modified on other grounds,* 674 F.2d 1217 (9th Cir.1981), *cert. denied,* 456 U.S.

946, 102 S.Ct. 2013, 72 L.Ed.2d 469 (1982) (denial of ownership of a wallet in an automobile constituted abandonment); *United States v. Canady*, 615 F.2d 694, 697 (5th Cir.), *cert. denied*, 449 U.S. 862, 101 S.Ct. 165, 66 L.Ed.2d 78 (1980) (disclaimer of luggage during airport boarding search constituted abandonment); *Lurie v. Oberhauser*, 431 F.2d 330, 333 (9th Cir.1970) (disclaimer of luggage seized at airport with defendant's matching claim check constituted abandonment).

The trial court, however, did not consider whether Nikzad's disclaimer of ownership itself may have been tainted by his ineffective consent to the police interview. *See United States v. Jackson*, 544 F.2d 407, 410 (9th Cir.1976) (if defendant's arrest were illegal, his subsequent denial of ownership of luggage would have been inadmissible). *Cf. United States v. Canady*, 615 F.2d at 697 n. 3 (finding that defendant's disclaimer was not caused by illegal police action); *United States v. Anderson*, 500 F.2d 1311, 1318 (5th Cir.1974) (same).[1]

We find it unnecessary to resolve this issue because the police did not need Nikzad's consent to speak with him outside the terminal. While Nikzad was in the terminal, he exhibited nervous behavior that captured the attention of police. Nikzad's glances and stares at the officers, nervous shuffling and evasion of police stares, provided grounds for a brief *Terry*-type investigative stop. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Nikzad's consent or lack of consent, therefore, was irrelevant to the initial police stop and questioning.

### B. *Nikzad's Consent to the Search of his Luggage*

■ A second consent was obtained from Nikzad to search his luggage, resulting in discovery of the briefcase inside. If

Nikzad's consent to the search was ineffective, the agents' warrantless physical search required probable cause and exigent circumstances. *Arkansas v. Sanders*, 442 U.S. 753, 761–62, 99 S.Ct. 2586, 2591–92, 61 L.Ed.2d 235 (1979); *United States v. Chadwick*, 433 U.S. 1, 11, 97 S.Ct. 2476, 2483, 53 L.Ed.2d 538 (1977). The government does not contend, and it does not appear from the facts, that the agents had probable cause for the search. Again, if Nikzad's consent to this search was invalid, the subsequent disclaimer of the briefcase may be tainted by the warrantless search. *See, e.g., United States v. Jackson*, 544 F.2d at 410.

We are unable to determine from this record, however, whether Nikzad's consent to the search was ineffective. A close reading of the transcript reveals that the trial court did not decide whether Nikzad freely consented to the search of his suitcase. Of course, the same considerations that prompted the court to discount Nikzad's consent to the police interview might require suppression of his consent to the search. Analytically, however, the two consents are separate events. Nikzad could have misunderstood police assurances that he was free to leave, but nevertheless have understood English well enough to realize he did not have to open his luggage. This is especially possible in light of the repeated police assurances that Nikzad was free to refuse to cooperate with their investigation, and Nikzad's statement granting consent. The district court should rule on the question.

If the district court finds that Nikzad freely consented to the search, it also should determine whether Nikzad's written consent to open the briefcase was freely given, in light of Agent Marcello's special care in reading the consent form line by line.[2]

1. In *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), the Supreme Court abandoned the concept of standing in favor of a "legitimate expectation of privacy" analysis. As we stated in *Veatch*, "The Court made clear that its decision only affected terminology and not substance ..." 647 F.2d at 998 n. 4. The principles and holdings of the pre-*Rakas* cases are thus left unaffected.

2. Even if the disclaimer was not tainted, Nikzad contends that he nevertheless retained a privacy interest in the briefcase's contents because the briefcase itself was located within a closed container under his ownership and control. *See United States v. Issacs*, 708 F.2d 1365, 1368 (9th Cir.), *cert. denied*, — U.S. —, 104 S.Ct. 165, 78 L.Ed.2d 150 (1983) (despite defendant's disclaimer of ownership, he retained a privacy

## CONCLUSION

We remand this case to the district court for determination of whether Nikzad freely consented to the search of his luggage, and for such additional findings as appear warranted. . In the event of a further appeal this case should be assigned to this panel, if feasible.

REMANDED.

---

interest in journals found inside his locked safe); *United States v. Portillo*, 633 F.2d 1313, 1316–17 & n. 1 (9th Cir.1980), *cert. denied*, 450 U.S. 1043, 101 S.Ct. 1763, 68 L.Ed.2d 241 (1981) (despite disclaimer of ownership, defendant maintained a privacy interest in the contents of two paper bags found in the locked trunk of a car under his control). *But see United States v. Veatch*, 647 F.2d at 999 (defendant abandoned his privacy interest by disclaiming ownership of a wallet found in passenger section of his automobile). We decline to rule on Nikzad's argument at this stage of the litigation for the reasons stated in the text of our opinion.