**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Eduardo Javier PEREZ, Defendant–Appellant.**

No. 93–10709.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 8, 1994.

Decided Oct. 4, 1994.

John Lambrose, Asst. Federal Public Defender, Las Vegas, NV, for defendant-appellant.

Daniel R. Schiess, Asst. U.S. Atty., Las Vegas, NV, argued (Thomas M. Gannon, on the brief), for plaintiff-appellee.

Before: FLETCHER, HALL and WIGGINS, Circuit Judges.

Opinion by Judge FLETCHER; Concurrence by Judge HALL.

FLETCHER, Circuit Judge:

Eduardo Perez appeals his conviction after a jury trial for possession of four kilograms of cocaine with intent to distribute, a violation of 21 U.S.C. § 841(a)(1). He argues that all evidence seized pursuant to a traffic stop should be suppressed, for a number of independent reasons. He claims that the stop was pretextual because the officers would not have stopped him absent a desire to search for evidence of more serious crime. He also contends that the officers lacked the requisite reasonable suspicion to question him about criminal matters not related to the purpose of the stop. He contends that he did not consent to the search of his car, and that the scope of the officers' search exceeded that of any consent he did give. He also argues that the district court erred in refusing his proffer of evidence concerning the racial characteristics of thirty-two other individuals stopped by the officers in question. We affirm.

I

"'A pretextual stop occurs when the police use a legal justification to make the stop in order to search a person or place, or to interrogate a person, for an unrelated serious crime for which they do not have the reasonable suspicion necessary to support a stop.'" *United States v. Cannon*, 29 F.3d 472, 477 (9th Cir.1994) (quoting *United States v. Guzman*, 864 F.2d 1512, 1515 (10th

Cir.1988)).[1]  Our circuit's caselaw has not been entirely consistent in the test it has applied to determine pretext.  *Cannon*, 29 F.3d at 475.  Some cases employ a "subjective" test: a stop is pretextual if "the motivation or primary purpose of the arresting officers" is to use the stop in order to search for evidence of an unrelated crime.  *United States v. Mota*, 982 F.2d 1384, 1386 (9th Cir.1993) (quoting *United States v. Smith*, 802 F.2d 1119, 1124 (9th Cir.1986)).  Recent cases have employed an "objective" test: a stop is pretextual unless a "reasonable officer," given the same circumstances, " 'would have' made the stop anyway, apart from [his or her] suspicions about other more serious criminal activity."  *Cannon*, 29 F.3d at 476; *United States v. Bowhay*, 992 F.2d 229, 231 (9th Cir.1993).  The stop here was not pretextual under either inquiry.

Troopers Owens and Roll observed Perez's van pass them and weave back and forth across the fog line.  The officers testified that they thought the van's driver was possibly either intoxicated or falling asleep at the wheel.  As it turned out, the van's steering was malfunctioning.  Whatever the cause, the officers' decision to stop the van was one any reasonable highway patrol officer would make.  We agree with the magistrate judge:

> in order to find the stop pretextual, this Court would have to find that but for their interdiction duties Troopers Owens and Roll would have irresponsibly allowed an apparently impaired driver to continue unimpeded down the highway.  The Court rejects such a finding as incogitable.

ER at 9.  *See United States v. Lillard*, 929 F.2d 500, 502 (9th Cir.1991) (stop was not pretextual where officer observed car driving erratically); *United States v. Smith*, 799 F.2d 704, 709 (11th Cir.1986) (stop was not pretextual where officer observed car weaving in and out of its lane).

Perez argues that the facts that Owens and Roll (1) had been trained as interdiction officers, and (2) had officer Carlson and his dog on standby, prove they were concerned only with catching drug runners.  These facts, however, prove only that the officers were *prepared for the possibility* that they might develop probable cause to search after making a valid traffic stop.  Moreover, Perez's contention that they pulled him over because they suspected him of drug activity is not supported by the record.  No evidence suggests that the officers had reason to be suspicious of Perez's van before they stopped it.  *See United States v. Gutierrez–Mederos*, 965 F.2d 800, 803 (9th Cir.1992) (rejecting appellant's contention that primary reason for stop was because his car fit "Narcotics Trafficking Characteristics" profile), *cert. denied*, —— U.S. ——, 113 S.Ct. 1315, 122 L.Ed.2d 702 (1993).

In sum, there is no support for Perez's contention that troopers Roll and Owens stopped him because of a desire to search for contraband.  On the contrary, any reasonable officer would have made the stop under the circumstances present here.  The district court was correct in concluding that the stop was not pretextual.

**II**

Perez contends that even if the officers' initial stop was justified, officer Owens had no reason to ask him whether he had any guns, drugs, or money in the car.  Questions asked during an investigative stop must be "reasonably related in scope to the justification for their initiation."  *United States v. Brignoni–Ponce*, 422 U.S. 873, 881, 95 S.Ct. 2574, 2580, 45 L.Ed.2d 607 (1975) (quoting *Terry v. Ohio*, 392 U.S. 1, 29, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968)).  An officer may broaden his or her line of questioning if he or she notices additional suspicious factors, *United States v. Bautista*, 684 F.2d 1286, 1290 (9th Cir.1982), *cert. denied*, 459 U.S. 1211, 103 S.Ct. 1206, 75 L.Ed.2d 446 (1983); *see also United States v. Barahona*, 990 F.2d 412, 416 (8th Cir.1993), but these factors must be "particularized" and "objective," *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981).  Whether Owens' questioning was based on a reasonable suspicion is a mixed issue of law

---

1.  The U.S. Supreme Court has never proscribed pretextual traffic stops, but has condemned pretextual *arrests*: "[a]n arrest may not be used as a pretext to search for evidence."  *United States v. Lefkowitz*, 285 U.S. 452, 467, 52 S.Ct. 420, 424, 76 L.Ed. 877 (1932).

and fact; the district court's determination is reviewed de novo. *United States v. Thomas*, 863 F.2d 622, 625 (9th Cir.1988).

Owens testified that his suspicions were aroused by a number of factors: Perez appeared very nervous, would not make eye contact, was sweating profusely, was not the vehicle's registered owner, was heading to a city known as a "drug hub," and had hands whose well-manicured appearance was inconsistent with Perez's stated work as a mechanic. We must consider these factors first separately, and then cumulatively.

■ Perez's nervous behavior, his avoidance of eye contact with officer Owens, and his profuse perspiration first caught the officers' attention. All are suspicious factors, even if they would not, alone, be sufficient to justify continued questioning. *United States v. Taylor*, 934 F.2d 218, 221 (9th Cir.1991) (defendant's nervousness at checkpoint constituted "minimal, articulable suspicion"), *cert. denied*, —— U.S. ——, 112 S.Ct. 971, 117 L.Ed.2d 136 (1992); *United States v. Hernandez–Alvarado*, 891 F.2d 1414, 1419 n. 6 (9th Cir.1989) (avoidance of eye contact can be considered suspicious if "special circumstances [ ] make innocent avoidance of eye contact improbable") (quoting *Nicacio v. INS*, 797 F.2d 700 (9th Cir.1986)); *United States v. Nikzad*, 739 F.2d 1431, 1432–33 (9th Cir.1984) (defendant's nervousness and failure to make eye contact gave rise to reasonable suspicion). Next, Owens discovered that Perez was not the van's registered owner. *See United States v. Fernandez*, 18 F.3d 874, 879 (10th Cir.1994) ("[A] defining characteristic of our traffic stop jurisprudence is the defendant's lack of a valid registration, license, bill of sale, or some other indicia of proof to lawfully operate and possess the vehicle in question, thus giving rise to objectively reasonable suspicion that the vehicle may be stolen."); *United States v. Gonzalez–Lerma*, 14 F.3d 1479, 1484 (10th Cir.1994) ("One recurring factor supporting a finding of reasonable suspicion ... is the inability of a defendant to provide proof that he is entitled to operate the vehicle he is driving."); *see generally United States v. Betancur*, 24 F.3d 73, 78 (10th Cir.1994) (permissible to ask about contraband where a driver gave registration in another person's name); *United States v. Barahona*, 990 F.2d 412, 416 (8th Cir.1993) (permissible to expand inquiry where driver produced a vehicle rental contract in another person's name); *United States v. Soto*, 988 F.2d 1548, 1554–56 (10th Cir.1993) (permissible to ask about contraband where driver could not provide the address of the person from whom he allegedly borrowed the car); *United States v. Horn*, 970 F.2d 728, 732 (10th Cir.1992) (permissible to ask about contraband where driver produced an un-notarized bill of sale for the vehicle).

He then learned that Perez was travelling to Salt Lake City, a known "drug hub." *See United States v. Sutton*, 794 F.2d 1415, 1426 (9th Cir.1986) (fact that defendant was observed in "a commonly used smuggling area" contributed to reasonable suspicion) (citing *United States v. Hickman*, 523 F.2d 323, 327–28 (9th Cir.1975), *cert. denied*, 423 U.S. 1050, 96 S.Ct. 778, 46 L.Ed.2d 639 (1976)). Finally, Owens noticed that although Perez claimed to work as a mechanic, his hands were very well-kept. This kind of perceived inconsistency can also contribute to a finding of reasonable suspicion. *United States v. Oba*, 978 F.2d 1123, 1128 (9th Cir.1992) (defendant's inconsistent accounts are grounds for suspicion); *Bautista*, 684 F.2d at 1291 (same); *see also United States v. Turner*, 928 F.2d 956, 959 (10th Cir.1991) ("[d]efendant claimed that he was an auto mechanic, but the officer observed that his hands were well-manicured and did not appear to be in the condition of someone who works as an auto mechanic").

The individual factors noticed by officer Owens were legitimate bases for suspicion. "[T]aken together, they amount to reasonable suspicion." *United States v. Sokolow*, 490 U.S. 1, 9, 109 S.Ct. 1581, 1586, 104 L.Ed.2d 1 (1989).

### III

■ Perez argues that he did not consent to the search of his car, and alternatively that his consent was not voluntary. The magistrate judge rightly saw the first issue as a credibility battle: Perez's word against that of the arresting officers. The magis-

trate believed the officers, and found Perez's testimony incredible. We review this determination for clear error. *United States v. Ramos,* 923 F.2d 1346, 1356 (9th Cir.1991).

At the suppression hearing Perez testified that the first question officer Owens asked him was whether he had any babies in the car. He claimed that the officers then almost immediately handcuffed him and began searching his car with the aid of Mickey the dog. He said that the consent form was produced and signed only after the cocaine was discovered. He testified that he could not read the consent form because officer Owens kept his hand over the part written in Spanish. He also testified that he knows no English except for the words "drivers," "license," "registration," and "babies."

The magistrate judge found Perez's claim concerning his English incredible in light of Perez's two years' residence in the United States. The magistrate found that it was simply too much of a coincidence that officer Owens, in questioning Perez, happened to use the only four English words Perez claimed to know. We agree, and note in addition that Perez fails to explain how, if he knew so little English, he could have responded to Owens's prior questions about where he was coming from and heading to, and about who the van's owner was. Moreover, Owens' testimony that the officers first secured consent and then searched was corroborated by the testimony of officer Carlson, Mickey's handler. The magistrate was not clearly erroneous in finding that Perez gave his consent to the search.

We are left with the question whether the consent was voluntary. The magistrate judge found that, "[u]nder the factual scenario described by Owens, it is clear that Perez freely and voluntarily consented to the search of his van." He noted,

> [Owens] had already returned the driver's license and registration to Perez, had finished verbally admonishing him for his unsafe driving, was in possession of nothing belonging to Perez, and spoke to Perez in a quiet, non-aggressive voice.

ER at 10 n. 8.

In reviewing the magistrate's determination, we must consider Perez's consent in light of the factors described in *United States v. Castillo,* 866 F.2d 1071, 1082 (9th Cir.1988). Nothing suggests that the officers exerted any overt coercion on Perez to consent, or told him that they could secure a warrant if he refused. *Id.* Nor was the situation inherently coercive: Perez was not under arrest or physically detained at the time, and the officers did not have their guns drawn. *Id.* Perez was briefly detained on a public highway, a setting held to actually discourage coercion. *Berkemer v. McCarty,* 468 U.S. 420, 438, 104 S.Ct. 3138, 3149, 82 L.Ed.2d 317 (1984). Perez signed a written consent form which specifically advised him, in Spanish, of his right to refuse consent. The officers did not give a Miranda warning, but it was not required, since Perez was not under arrest at the time. *Schneckloth v. Bustamonte,* 412 U.S. 218, 231–32, 93 S.Ct. 2041, 2049–50, 36 L.Ed.2d 854 (1973) (failure to give Miranda warning does not render consent invalid if defendant is not subject of custodial interrogation). Viewing the totality of the circumstances, *Castillo,* 866 F.2d at 1082, we conclude that Perez's consent was voluntary. *See Gutierrez–Mederos,* 965 F.2d at 802–03 (finding consent to be voluntary under similar circumstances).

## IV

"The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Cannon,* 29 F.3d at 477 (quoting *Florida v. Jimeno,* 500 U.S. 248, 251, 111 S.Ct. 1801, 1804, 114 L.Ed.2d 297 (1991)). Perez claims that "[n]o reasonable person ... could have foreseen that his consent opened the door to a trained K–9 unit's examination of their entire automobile." Blue Brief at 19. Whether a search went beyond the scope of a suspect's consent is a determination reviewed for clear error. *United States v. Huffhines,* 967 F.2d 314, 319 (9th Cir.1992).

We conclude that the search was not more intrusive than Perez had envisioned

when giving his consent, but rather simply more effective. Mickey the dog was *outside* of Perez's van when he alerted to the spot on its undercarriage where the drugs were found. The undercarriage of a van, where the drugs were found, is not a uniquely private space. *See United States v. Uribe–Galindo*, 990 F.2d 522, 525–26 (10th Cir.1993) (stating that "examination of the exterior of a vehicle is less intrusive than a search of the interior," and holding that inspection of a car's undercarriage was part of a reasonable, routine border search). The personal intrusion attributable to a dog sniff is minimal. *Taylor*, 934 F.2d at 220 (citing *United States v. Place*, 462 U.S. 696, 707, 103 S.Ct. 2637, 2644–45, 77 L.Ed.2d 110 (1983)). Using a narcotics dog to carry out a consensual search of an automobile is perhaps the least intrusive means of searching because it involves no unnecessary opening or forcing of closed containers or sealed areas of the car unless the dog alerts. *Taylor*, 934 F.2d at 221 (citing *United States v. Morales–Zamora*, 914 F.2d 200, 205 (10th Cir.1990)). There is thus no legal basis for Perez's assertion that his consent did not include the canine search. Nor does the record indicate that Perez in fact objected, at the time, to the scope of the search or the use of a narcotics dog. "Failure to object to the continuation of a vehicle search after giving general consent to search 'is properly considered as an indication that the search was within the scope of the initial consent.'" *Cannon*, 29 F.3d at 477 (quoting *United States v. Sierra–Hernandez*, 581 F.2d 760, 764 (9th Cir.), *cert. denied*, 439 U.S. 936, 99 S.Ct. 333, 58 L.Ed.2d 333 (1978)). The district court was correct in finding that officers' search did not exceed the scope of Perez's consent.

## V

■ At the suppression hearing, Perez sought to introduce incident and arrest reports that would, he claimed, demonstrate that officers Owens and Roll relied impermissibly on race in determining whether to stop persons for traffic violations. This proffer

went solely to Perez's pretextual stop claim. The district court found the evidence inadmissible. We will reverse only upon finding an abuse of discretion. *United States v. Daly*, 974 F.2d 1215, 1216–17 (9th Cir.1992).

■ The proffered evidence was clearly irrelevant. *See* Fed.R.Evid. 401. The stopping officers' uncontradicted testimony is that they never saw the driver of Perez's van before pursuing it and pulling it over.[2] Data about the racial characteristics of persons previously stopped thus has no bearing on Perez's pretextual stop claim, because Perez's race could not have figured into the officers' decision to pull him over. *See* Reporter's Transcript 36–37 (magistrate stating, "there is not a scintilla of evidence in this record that the stop ... was racially or ethnically driven, not a scintilla"). The district court therefore did not err in rejecting Perez's proffer and excluding the evidence. *See Gutierrez–Mederos*, 965 F.2d at 803 ("[n]otwithstanding the statistical evidence, appellant does not dispute that [officer] Anderson could not determine the ethnicity of the car's occupants prior to the stop").

AFFIRMED.

CYNTHIA HOLCOMB HALL, Circuit Judge, concurring:

I agree with the panel's conclusion that Perez's conviction should be affirmed. I write separately to express my concern that Part I of the panel opinion, while it reaches the correct result, misstates the law of the Ninth Circuit on pretextual searches. I therefore concur in the panel opinion with the exception of Part I.

The majority's statement that "[o]ur circuit's caselaw has not been entirely consistent in the test it has applied to determine pretext," Majority Opinion at 12034–35, is accurate only up to a point. It is true that some Ninth Circuit cases have in the past been interpreted as mandating a subjective inquiry into police officers' intentions when analyzing a pretextual stop claim, whereas

---

**2.** Nor is there any reason to doubt this testimony. It was dark at the time, and the officers could not have seen Perez in the glare of his own headlights as he approached. After he passed them, travelling at around 60 miles per hour, only the silhouette of the back of his head would have been visible.

others applied an objective, "reasonable officer" test. Any inconsistency, however, was reconciled by *United States v. Cannon*, 29 F.3d 472 (9th Cir.1994).

*Cannon* surveyed the Ninth Circuit pretextual stop cases, as well as those of other circuits. The opinion noted that "[s]ome of our language has implied that [the] subjective inquiry is required," *id.* at 475, but went on to hold that the prior cases were in fact consistent with the objective test. Specifically, *Cannon* squarely held that when faced with a claim that a traffic stop was pretextual, "courts should inquire whether a reasonable officer 'would have' made the stop anyway, apart from [his or her] suspicions about other more serious criminal activity." *Id.* at 476 (internal quotes in original). This objective test limits our inquiry in the present case.

*Cannon* is the law of the Ninth Circuit on this issue. Unless and until it is overturned by the en banc court, we are bound to apply the objective test that it mandates. I cannot agree, therefore, with the majority's analysis of the present case, which uses both the objective and subjective tests. After *Cannon*, the subjective analysis is simply irrelevant.

Under the objective test, the stop in the present case unquestionably passes muster. A reasonable officer who viewed the erratic manner in which Perez was driving clearly would have pulled the van over. The stop here therefore was not pretextual.

For the above reasons, while I concur in the judgment and the remainder of the panel opinion, I cannot concur in Part I of the panel opinion.