755 So.2d 657 (1999)
Carlos CASTRO, Appellant,
v.
STATE of Florida, Appellee.
No. 98-1252.
District Court of Appeal of Florida, Fourth District.
May 26, 1999.
*658 David L. Margolesky of Law Offices of Barry T. Shevlin, P.A., Bay Harbor Islands, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Myra J. Fried, Assistant Attorney General, West Palm Beach, for appellee.
WARNER, J.
Appellant claims that the trial court erred in denying his motion to suppress drugs found in his vehicle after a traffic stop, because his consent to search was involuntary due to his inability to understand English. Alternatively, he claims that the use of a dog to facilitate the search was beyond the scope of the consent. We affirm as to both issues.
Officer Hardley stopped appellant's vehicle for having improper tags. While the officer had received information from the Drug Enforcement Administration that appellant would be carrying a quantity of cocaine, there is no challenge to the lawfulness of the traffic stop. Appellant was unable to produce a driver's license, registration, or insurance card upon Hardley's request. When the officer spoke to appellant, they conversed only in English. Hardley asked appellant if he could read and write English and appellant responded in the negative; however, appellant told Hardley that he could understand English. Hardley desired to search the car and requested consent from appellant. The officer filled out a consent to search form which he read to appellant in English. The consent form authorized a complete search of the vehicle and the contents within the vehicle. After discussing the search, appellant signed the form.
Another trooper arrived with a dog to facilitate the search, and appellant was placed in the patrol car while the search was conducted. According to Hardley, the second officer arrived prior to filling out the consent form. During the search, the dog conducted an exterior sniff around appellant's car, and, after alerting to cocaine while still outside of the vehicle, the dog then entered appellant's car. Eventually cocaine was found behind the center console. Additionally, without the use of the dog, cocaine was subsequently found in the patrol car under the floor carpet after appellant vacated the vehicle. Appellant was arrested for trafficking cocaine.
Appellant moved to suppress the cocaine based upon the involuntariness of his consent. He claimed that he did not speak English and could not understand it. He had several witnesses testify on his behalf that he could not speak English. However, this was contrary to Hardley's testimony. The trial court specifically found that appellant's claim that he did not understand English was not credible and that the consent was voluntary, based upon the officer's testimony. It was well within the court's discretion to evaluate all of the facts and to determine that the officer's testimony was more credible than appellant's. Cf. Gilbert v. State, 629 So.2d 957, 959 (Fla. 3d DCA 1993); State v. Cardosa, 609 So.2d 152, 153 (Fla. 5th DCA 1992).
Alternatively, the appellant argues that the use of a dog (referred to by the police as a K-9 unit) was beyond the scope of any consent given to the officers, relying primarily on State v. McLeod, 664 So.2d 983 (Fla. 4th DCA 1995), cert. denied, 516 U.S. 1116, 116 S.Ct. 919, 133 L.Ed.2d 849 (1996). In McLeod, the trial court found that a consent to search obtained by the officer in that case encompassed a search of the interior of the vehicle but did not include a K-9 sniff search of the interior. Noting that this was a factual finding by the trial court, we affirmed, stating that, "[t]he factual finding of no consent should not be confused with an erroneous legal conclusion that the Constitution precludes the use of police dogs sniffing around automobiles looking for illegal drugs." Id. at 984 (citation omitted). Thus, we affirmed the trial court's factual finding based upon the facts and circumstances presented in *659 McLeod that a canine sniff search exceeded the scope of the consent given in that case. By contrast, in this case, the trial court made no such finding. In fact, the trial court's express reference to the K-9 search of the vehicle implies that it did not find that the search exceeded the consent.
United States v. Perez, 37 F.3d 510 (9th Cir.1994), is analogous to this case. Like appellant, Perez claimed that he had not consented to the search based on his inability to speak or understand English, and he alternatively argued that the officers' subsequent use of a dog went beyond the scope of any consent which he may have given. The Ninth Circuit observed:
"The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of `objective' reasonablenesswhat would the typical reasonable person have understood by the exchange between the officer and the suspect?" Cannon, 29 F.3d at 477 (quoting Florida v. Jimeno, 500 U.S. 248, 251, 111 S.Ct. 1801, 1804, 114 L.Ed.2d 297 (1991)). Perez claims that "[n]o reasonable person ... could have foreseen that his consent opened the door to a trained K-9 unit's examination of their entire automobile." Blue Brief at 19. Whether a search went beyond the scope of a suspect's consent is a determination reviewed for clear error. United States v. Huffhines, 967 F.2d 314, 319 (9th Cir.1992).
We conclude that the search was not more intrusive than Perez had envisioned when giving his consent, but rather simply more effective. Mickey the dog was outside of Perez's van when he alerted to the spot on its undercarriage where the drugs were found. The undercarriage of a van, where the drugs were found, is not a uniquely private space. See United States v. Uribe-Galindo, 990 F.2d 522, 525-26 (10th Cir. 1993) (stating that "examination of the exterior of a vehicle is less intrusive than a search of the interior," and holding that inspection of a car's undercarriage was part of a reasonable, routine border search). The personal intrusion attributable to a dog sniff is minimal. Using a narcotics dog to carry out a consensual search of an automobile is perhaps the least intrusive means of searching because it involves no unnecessary opening or forcing of closed containers or sealed areas of the car unless the dog alerts. There is thus no legal basis for Perez's assertion that his consent did not include the canine search. Nor does the record indicate that Perez in fact objected, at the time, to the scope of the search or the use of a narcotics dog. "Failure to object to the continuation of a vehicle search after giving general consent to search `is properly considered as an indication that the search was within the scope of the initial consent.'" Cannon, 29 F.3d at 477 (quoting United States v. Sierra-Hernandez, 581 F.2d 760, 764 (9th Cir.), cert. denied, 439 U.S. 936, 99 S.Ct. 333, 58 L.Ed.2d 333 (1978)). The district court was correct in finding that officers' search did not exceed the scope of Perez's consent.
37 F.3d at 515-516 (citations omitted) (emphasis in original). As in Perez, appellant made no objection to indicate to the officers that his consent to search the car did not encompass the use of a K-9 unit. Nor did he object when the drug dog began his search. See United States v. Gonzalez-Basulto, 898 F.2d 1011, 1013 (5th Cir. 1990)(search did not exceed scope of defendant's consent where defendant knew that dog units were present when he consented and where he "stood silent" after giving consent as dogs were hoisted into his trailer).
Finally, the dog alerted to the outside of the appellant's vehicle. A dog alert to the outside of a vehicle does not constitute a search within the meaning of the Fourth Amendment to the Constitution. See United States v. Place, 462 U.S. 696, 707, 103 S.Ct. 2637, 2644-45, 77 L.Ed.2d 110 (1983).
*660 We affirm the remaining issue raised by appellant, as we deem it to be harmless.
Affirmed.
STEVENSON, J., and CONNER, BURTON C., Associate Judge, concur.