**UNITED STATES of America**
Plaintiff—Appellee,

v.

**Leonel RIVERA, aka Ruben Soliz,**
Defendant—Appellant.

No. 00–10218.

D.C. No. CR–97–040–WBS.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 14, 2001.

Decided June 4, 2001.

618

Before HUG and T.G. NELSON, Circuit Judges, and SHADUR,* District Judge.

## MEMORANDUM **

Leonel Rivera ("Rivera") appeals his conviction for possession of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 and conspiracy to do the same in violation of 21 U.S.C. § 846. Rivera contends that the district court erred when it did not suppress (1) evidence seized during a search of his car and (2) a self-incriminating conversation between Rivera and his co-defendant Robert Mendez Mendoza ("Mendoza") that was recorded while the two men were waiting in a police car while the police searched Rivera's car. We reject both contentions and affirm.

 Without question, the most difficult issue in this case is whether Officer Charles Hughes' initial stop of Rivera's car was constitutionally permissible. Traffic stops are seizures under the Fourth Amendment,[1] so officers must have at least a reasonable suspicion that a traffic violation has occurred when making the decision to stop a vehicle (*United States v. Rojas–Millan*, 234 F.3d 464, 468–69 (9th

---

* Honorable Milton I. Shadur, Senior United States District Judge for the Northern District of Illinois, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit rule 36–3.

1. As always, we employ the conventional reference to the underlying Bill of Rights provision, even though what is involved conceptually is the Fourteenth Amendment and its incorporation of Bill of Rights guaranties.

Cir.2000)). Reasonable suspicion "is formed by specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the person detained is engaged in criminal activity" (*id.*). Although determinations of reasonable suspicion are reviewed de novo, underlying factual findings upon which such determinations are based are reviewed for clear error (*Ornelas v. United States,* 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)).

It is surely fair to characterize as problematic the conclusion that Officer Hughes was justified in conducting the initial traffic stop. That conclusion credited Officer Hughes' testimony that he was capable of estimating accurately that Rivera's vehicle was moving 75 mph in a 70 mph zone, despite the facts that he lacked a radar gun, made the determination by observing the fast-moving car while his own vehicle was at a standstill under a viaduct and had just 35 yards—occupying just under a second[2]—within which he could make his estimate, so that he then set out to pursue the Rivera car. Though the record refers to the officer as "certified," it does not explain how that is done, nor does it explain whether the validation of the uncalibrated officer as a human radar gun involves such limited opportunities for observation, as contrasted for example with following another car so that the differential in the two rates of motion is much smaller.

Officer Hughes also testified that he was able to see the six-inch air freshener hanging from the rear view mirror of the Rivera vehicle as it passed his car during the same instant, given the circumstances. Though that testimony too may be troublesome, this time both in terms of probability and because it poses a possible legal question, once the district court's determination that Officer Hughes was able to determine the speed of the vehicle is credited the traffic stop is justified by the speeding violation alone. Hence there is no need to consider independently whether the presence of the air freshener would also have justified the stop.

But the issue before us is not whether, on the cold record before us, we would have reached the same decision as the experienced district judge who heard the evidence and observed the witness. Instead the question is whether the judge's factual findings on the matters just discussed were clearly erroneous. That cannot be said, and we therefore defer to those findings.

■■■ Once that point is passed, Rivera faces extraordinarily tough sledding. Thus he claims that even if the initial stop was justified, Officer Hughes detained the defendants unlawfully, asking questions unrelated to the purpose of the traffic stop. Though it is true that questions asked during an investigative stop must be "reasonably related in scope to the justification for their initiation" (*United States v. Perez,* 37 F.3d 510, 513 (9th Cir.1994), quoting the original source in *Terry v. Ohio,* 392 U.S. 1, 29, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)), an officer may broaden the line of questioning if he or she notices additional "particularized" and "objective" suspicious factors (*Perez,* 37 F.3d at 513). Here Officer Hughes had reasonable suspicion to detain and question Rivera based on several factors:

1. Rivera lacked identification and therefore could not prove ownership of the vehicle.

---

**2.** According to the evidence, the position of Officer Hughes' vehicle gave him only a 35–yard view of Rivera's car in motion. At 75 mph a car travels 110 feet (36—⅔ yards) per second.

2. Officer Hughes observed that the left rear quarter stereo speaker in the vehicle was slightly ajar, which was inconsistent with the immaculate appearance of the vehicle. Officer Hughes believed that drugs might be hidden in that panel.

3. Officer Hughes also noticed an overpowering smell of air freshener and aftershave in the vehicle, odors that Officer Hughes believed might have been used to mask the smell of narcotics.

4. Officer Hughes observed that during the wait for information concerning the car and its occupants, driver Robert Mendez Mendoza ("Mendoza") appeared very nervous (a circumstance that was innocuous enough of itself, but that linked up to the other factors).

For cases involving similar aggregations of facts that upheld such detention and expanded inquiry, see, e.g., *United States v. Baron*, 94 F.3d 1312, 1319 (9th Cir.1996) and *Perez*, 37 F.3d at 514.

█ Rivera's third contention is that even if Officer Hughes' stop and subsequent questioning were lawful, the district court's determination that Rivera consented to the search was clearly erroneous. We have identified a number of factors that militate against a voluntariness determination: whether or not (1) the suspect was in custody; (2) the arresting officers had their guns drawn or otherwise overmastered the suspect; (3) *Miranda* warnings were not given before the search; (4) the suspect was not told he had a right to withhold his consent to be searched; and (5) the officers claimed they could obtain a search warrant (*United States v. Kim*, 25 F.3d 1426, 1432 (9th Cir.1994)). Rivera contends both that the district court erroneously concluded he was not in custody when he was asked for consent and that he

understood the request to give consent. But again Rivera offers no basis to conclude that the judge's factual findings with respect to those factors were clearly erroneous, and so there is no reason to question the district court's determination that Rivera voluntarily consented to the search.

█ Finally, Rivera claims that his Fourth Amendment rights were violated when his conversation with Mendoza was recorded while the two were seated in the back of Officer Randy Fisher's squad car. To establish a constitutionally protected reasonable expectation of privacy, Rivera must demonstrate both a subjective and objective expectation of privacy (*United States v. McIver*, 186 F.3d 1119, 1125 (9th Cir.1999), quoting *California v. Ciraolo*, 476 U.S. 207, 211, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986)). In that respect Rivera fails the subjective prong: While in the patrol car he wondered aloud to his companion whether there was a recorder there, and he testified at trial that he had suspected there was. Under those circumstances Rivera cannot claim a reasonable subjective expectation of privacy when his suspicion proved to be accurate, so that we need not address the general expectation of privacy in a patrol car (see, e.g., *United States v. Turner*, 209 F.3d 1198, 1200–01 (10th Cir.2000) and cases cited there). We therefore conclude that the recording of the patrol car conversation did not violate Rivera's Fourth Amendment rights.

All of that being true, we affirm both the district court's denial of Rivera's motion to suppress and Rivera's ensuing conviction.

AFFIRMED.