# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
                *Plaintiff-Appellee,*

                v.

LIONEL MENDEZ,
                *Defendant-Appellant.*

No. 05-10205

D.C. No.
CR-04-00241-JAT

ORDER AND
OPINION

Appeal from the United States District Court
for the District of Arizona
James A. Teilborg, District Judge, Presiding

Argued and Submitted
February 16, 2006—San Francisco, California

Filed February 23, 2007

Before: Stephen Reinhardt, Richard A. Paez, and
Richard C. Tallman, Circuit Judges.

Opinion by Judge Reinhardt

**COUNSEL**

Jon M. Sands & Michael D. Gordon, Federal Public Defender, Phoenix, Arizona, for the defendant-appellant.

Paul K. Charlton, John Joseph Tuchi & Bill C. Solomon, United States Attorney, Phoenix, Arizona, for the plaintiff-appellee.

**ORDER**

The majority opinion and dissent, filed October 30, 2006, are hereby withdrawn. The superseding opinion will be filed concurrently with this order. Further petitions for rehearing or rehearing en banc may be filed.

**OPINION**

REINHARDT, Circuit Judge:

Lionel Mendez was pulled over by two police officers for failure to display a visible license plate or registration tag. He

was asked to exit the car, patted down for weapons and told to sit on the curb behind the vehicle while a records check was conducted. In response to questioning about matters unrelated to the purpose of the traffic stop, Mendez told the officers that he was a felon and that there was a gun in the vehicle, at which point they arrested him, searched the car and found the gun. After the district court denied his motion to suppress the evidence, Mendez entered a conditional plea of guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The only issue on appeal is whether the district court erred when it denied his motion to suppress. We conclude that it did not.

## I.  FACTUAL AND PROCEDURAL HISTORY[1]

At approximately 9:18 p.m. on December 21, 2003, two Phoenix gang enforcement officers pulled over a car driven by Mendez because it did not appear to have a license plate or temporary registration tag. Both officers testified that the sole purpose of the stop was "no registration." The officers, Detectives Jaensson and Bracke, approached the car. Det. Jaensson told Mendez why they had stopped him and asked for "his identification or license." Mendez presented a California identification card. Det. Jaensson then instructed him to get out of the vehicle and interlock his hands behind his head. He proceeded to pat him down for weapons, during which time he noticed a tattoo on Mendez's left hand. The pat-down produced no weapons. Det. Jaensson then instructed Mendez to sit on the curb behind his car.

Det. Jaensson stayed with Mendez at the curb while Det. Bracke took the identification card to the patrol car to conduct a records check. While waiting for Det. Bracke to complete the records check, Det. Jaensson again noticed the tattoo on

---

[1]Our recitation of the facts is based primarily on the testimony adduced at the suppression hearing. Detectives Jaensson and Bracke testified; Mendez did not.

Mendez's left hand and recognized it as a gang-affiliated insignia. Prompted by the gang tattoo, he asked Mendez several questions, beginning with "Where are you from?" According to Det. Jaensson, Mendez responded that he was "from the Latin Kings," a gang located in Chicago. Det. Jaensson testified that he next asked Mendez about his other tattoos. In response to one of Det. Jaensson's questions, Mendez said that he had left the Latin Kings "in good standing," and had moved to Arizona "to get away from all that, to turn his life around."

While Det. Jaensson was questioning Mendez, Det. Bracke was at the patrol car conducting a records check, using the car's Mobile Data Terminal ("MDT").[2] At this time, he noticed in the rear window of Mendez's vehicle a temporary registration plate that had expired eight days earlier on December 13th.

After completing the records check, which revealed that Mendez had a valid driver's license and no outstanding warrants, Det. Bracke returned to the curb with the intention of informing him that the temporary registration plate in his rear window had expired. While returning, Bracke overheard Mendez telling Det. Jaensson that he had come to Arizona "trying to get away from the gang life." Det. Bracke also overhead him say that he had spent time in prison in Illinois. Upon approaching the curb, Det. Bracke asked Mendez why he had been imprisoned. Mendez replied that he had been convicted of a weapons violation. Det. Bracke then asked whether he had any weapons in the car. According to the two detectives, Mendez became agitated, told them that he was a good father and was trying to make a good life for himself in Arizona. He then added that there was a firearm in the driver's door handle. At this point, the officers arrested him. Det. Bracke then searched the vehicle and found a loaded, small

---

[2]The MDT is the computer in the patrol car that the officers use to conduct records checks.

caliber, semi-automatic pistol in the driver's side armrest. The entire encounter up to the time of the arrest and search took approximately eight minutes.

Mendez was indicted on charges of violating 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (felon in possession of a firearm). He moved to suppress the handgun, arguing that the officers improperly interrogated him about matters unrelated to the traffic stop and failed to diligently investigate the purpose of the stop. The district court denied the motion, finding that the detectives "identified specific, objective factors sufficient to permit them to expand the scope of questioning" and did not unreasonably prolong the stop. Mendez subsequently entered a conditional guilty plea, preserving his right to appeal the court's ruling on the suppression motion. The district court sentenced him to fifty-seven months in prison. He appeals.

## II.   DISCUSSION

Mendez does not contest the legality of the initial traffic stop. Instead, he argues that the officers' unrelated questioning and the purported extended detention violated his Fourth Amendment rights because (1) the officers did not observe additional particularized, objective factors sufficient to create reasonable suspicion to justify interrogating him about matters beyond the purpose of the stop, and (2) the officers unreasonably prolonged the stop.[3]

[1] We agree with the district court that the stop was not unnecessarily prolonged. Det. Jaensson's questioning occurred while Det. Bracke was running a check on Mendez's identification. It could not have expanded the duration of the stop since the stop would, in any event, have lasted until after the check had been completed. *See Berkemer v. McCarty*, 468

---

[3]Mendez also claims that the officers' questioning violated Arizona law. However, Mendez forfeited his state law claim by failing to raise it before the district court in his motion to suppress.

U.S. 420, 437 (1984) (stating that a records check is an expected part of a traffic stop). Having overheard Mendez's answer to Det. Jaensson as he was returning to his vehicle, Det. Bracke immediately asked his two questions. The arrest occurred only eight minutes after the stop.

Mendez further argues that the officers were not diligently investigating the traffic violation because the officers did not run a check on his car's vehicle identification or its registration until after he had been arrested. However, the district court's factual determination that the officers were diligently pursuing the purpose of the traffic stop was not clearly erroneous. The record suggests that, until Mendez told the officers about his prison record and his possession of a weapon, Det. Bracke may have intended to let him go with a warning about his expired temporary registration plate and, thus, may have seen no need to check his registration or vehicle registration number further.

**[2]** Mendez's primary argument, that the officers lacked reasonable suspicion to support their questioning, is "premised on the assumption that the officers were required to have independent reasonable suspicion in order to question [him] . . . because the questioning constituted a discrete Fourth Amendment event." *Muehler v. Mena*, 544 U.S. 93, 100-01 (2005). In making this claim, Mendez understandably relied on our precedent holding that, during a traffic stop, a police officer may only "ask questions that are reasonably related in scope to the justification for his initiation of contact" and may expand the scope of questioning beyond the initial purpose of the stop only if he "articulate[s] suspicious factors that are particularized and objective." *United States v. Murillo*, 255 F.3d 1169, 1174 (9th Cir. 2001); *see also United States v. Chavez-Valenzuela*, 268 F.3d 719, 724 (9th Cir. 2001) ("An officer must initially restrict the questions he asks during a stop to those that are reasonably related to the justification for the stop."); *United States v. Perez*, 37 F.3d 510, 513 (9th Cir. 1994). The Supreme Court, however, recently decided in

*Muehler*, that "mere police questioning does not constitute a seizure" unless it prolongs the detention of the individual, and, thus, no reasonable suspicion is required to justify questioning that does not prolong the stop. *Muehler*, 544 U.S. at 101 (internal quotation marks omitted). Although *Muehler* involved an interrogation during a search of a building, and made no mention of our precedent regarding questioning during traffic stops, its reasoning is equally applicable in the traffic stop context. *See id.* (noting that in *Illinois v. Caballes*, 543 U.S. 405, 408 (2005), it "rejected the notion that the shift in purpose from a lawful traffic stop into a drug investigation was unlawful because it was not supported by any reasonable suspicion." (internal quotation marks omitted)). To the extent that *Chavez-Valenzuela, Murillo*, and *Perez* hold that such questioning must be supported by separate reasonable suspicion, they have been overruled by *Muehler*. *See Miller v. Gammie*, 335 F.3d 889, 899-900 (9th Cir. 2003) (holding that a three-judge panel may depart from Circuit precedent that has not "been expressly overruled by an en banc court" when an intervening decision by the Supreme Court or en banc court has "undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable"). Thus, because we conclude that the officers' questioning did not prolong the stop, we are compelled to hold that the expanded questioning need not have been supported by separate reasonable suspicion.

## III.   CONCLUSION

We hold that the officers' questioning of Mendez did not extend the duration of a lawful stop. For this reason, we also hold that the expanded questioning need not have been supported by separate reasonable suspicion.

AFFIRMED.