**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 10-50166 |
| Plaintiff - Appellee, | D.C. No. 2:08-cr-01207-CAS-1 |
| v. | |
| TRANETTE REGINA EVANS, | MEMORANDUM* |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Central District of California
Christina A. Snyder, District Judge, Presiding

Argued and Submitted March 10, 2011
Pasadena, California

Before: B. FLETCHER, REINHARDT, and WARDLAW, Circuit Judges.

Tranette Regina Evans appeals the district court's denial of her motion to
suppress, following which she entered a conditional guilty plea to using one or
more unauthorized access devices in violation of 18 U.S.C. § 1029(a)(2), and to

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

committing aggravated identity theft, 18 U.S.C. § 1028A(a)(1). We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm.

Evans's appeal implicates the proper scope of a traffic stop. "A seizure that is justified solely by the interest in issuing a [. . . ] ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). An "officer's inquiries into matters unrelated to the justification for the traffic stop . . . do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop." *Arizona v. Johnson*, 129 S. Ct. 781, 788 (2009). Thus, during that period that it is reasonable, a police officer may lawfully request identification from a passenger in the car. *See Hiibel v. Sixth Judicial Dist. Ct. of Nev., Humboldt Cty.*, 542 U.S. 177, 185 (2004) ("In the ordinary course a police officer is free to ask a person for identification without implicating the Fourth Amendment."). A police officer may also lawfully conduct a check on the passenger using his or her identification. *See United States v. Diaz-Castaneda*, 494 F.3d 1146, 1153 (9th Cir. 2007) ("[T]here is no constitutional basis for complaint when the police properly obtain information located in a driver's license or state ID card, and then use it to access additional non-private (but inculpatory) information about the document's owner.").

2

The police officer's request for identification from Evans's passenger and subsequent want/warrant check for her were therefore lawful. This inquiry occurred about five to six minutes after the initial traffic stop and took about three to five minutes to complete. The inquiry revealed that the passenger had an outstanding arrest warrant and was an Endangered Missing Adult in the National Missing Person Database, prompting the officers to arrest the passenger. The arrest of the passenger occurred about seven to eight minutes after the stop and took two to three minutes to complete. The duration of the stop, up to that point, was reasonable. *See United States v. Turvin*, 517 F.3d 1097, 1103 (9th Cir. 2008) ("Rather than bright-line simplification, the Constitution requires a reasonableness analysis."); *id*. at 1101 (fourteen minutes was "no longer than an ordinary traffic stop could reasonably take"). Because the events directed to the passenger did not "measurably extend the duration of the stop," *Johnson*, 129 S. Ct. at 788, there was no additional seizure of Evans, the driver, within the meaning of the Fourth Amendment.

Nor was there an additional seizure of Evans when she was ordered out of the car. *Pennsylvania v. Mimms*, 434 U.S. 106, 111 n.6 (1977) (per curiam) ("[O]nce a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the

3

Fourth Amendment's proscription of unreasonable searches and seizures.").

Evans's furtive movements when she was asked to do so, as well as her admission that she was trying to hide a pipe, provided the police officer with probable cause to search the car for drug paraphernalia. *See United States v. Noster*, 590 F.3d 624, 629–30 (9th Cir. 2009) ("[P]robable cause exists where under the totality of the circumstances known to the officer, a prudent person would have concluded that there was a fair probability that the suspect had committed or was committing a crime."), *cert. denied*, 130 S. Ct. 2362 (2010). Once the officer found the pipe, noticed it had burn marks, and arrested Evans for possession of drug paraphernalia, the officer could lawfully search the car, including the passenger compartment, for additional contraband. *See Arizona v. Gant*, 129 S. Ct. 1710, 1719 (2009) ("[C]ircumstances unique to the vehicle context justify a search incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'") (quoting *Thornton v. United States*, 541 U.S. 615, 632 (2004) (Scalia, J., concurring in the judgment)); *id*. at 1721 ("If there is probable cause to believe a vehicle contains evidence of criminal activity, *United States v. Ross*, 456 U.S. 798, 820–821, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982), authorizes a search of any area of the vehicle in which the evidence might be

found. . . . *Ross* allows searches for evidence relevant to offenses other than the offense of arrest. . . .”).

In light of the foregoing, we need not address whether the fruits of the search would have been inevitably discovered pursuant to an inventory search.

**AFFIRMED.**

*United States v. Evans*, No. 10-50166

REINHARDT, Circuit Judge, dissenting:

I respectfully disagree with the majority's view that the police acted lawfully when they prolonged Evans's detention in order to investigate her passenger. I would hold that any detention of a driver for a "measurable" period during which the police are neither investigating the driver's entitlement and ability to operate the car, nor writing a ticket, results in an additional seizure of the driver. That additional seizure, absent any additional suspicion as to the driver, is unconstitutional.

A broken taillight, an incomplete stop at a stop sign, or an illegal U-turn should justify no more than a traffic stop and a ticket—not an additional detention of the driver while the police investigate the backgrounds of any number of passengers who happen to be in the stopped car. An analogy to a traditional *Terry* stop makes this clear. Suppose that five friends are walking down the street, and the police conduct a lawful *Terry* stop of one who arouses their suspicion, but the stop clears that person of any further suspicion. Surely the police could not then continue to detain the person they had originally stopped while investigating the person's four friends, one by one: "an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 500 (1983).

The analysis should be precisely the same when the person whom the police originally stop is the driver of a car, and his four friends—or one friend—are

passengers in the car. Although automobiles have special status in Fourth Amendment doctrine, the concern that has led to this result—the ease of spiriting away evidence that might be found in a car, *see, e.g., Carroll v. United States*, 267 U.S. 132 (1925)—has no bearing on the additional seizure of a driver for the sole purpose of investigating another person with whom he happens to be physically proximate. When it comes to seizures, rather than searches, "most traffic stops resemble, in duration and atmosphere, the kind of brief detention authorized in *Terry*." *Berkemer v. McCarty*, 468 U.S. 420, 439 n.29 (1984).

Although passengers are necessarily detained while the police issue the driver a traffic citation, the converse is not true: the police have no lawful reason not to allow a driver to leave solely because they are engaged in investigating a passenger, whether or not they have cause for that investigation.[1] A driver might choose to wait for the result of his friend's investigation, but he need not do so. To require the driver to stay put while the police investigate his friend—once the police have completed the

---

[1] Prolonging the driver's detention to investigate passengers causes an even more serious constitutional violation where the police lack any cause or reasonable suspicion for investigating or detaining the passenger in the first place. We need not decide here whether a passenger who hands over his identification card when the police ask him to do so thereby consents to being detained while the police perform a records check, because the appellant here is a driver, who should not in any event have been detained while the police conducted a suspicionless investigation of her friend.

2

purpose of their initial stop of the driver—is to effect an unlawful additional seizure of the driver.

The detention of the driver could be even more egregiously unconstitutional when the car contains multiple passengers. Here, the officers' encounter with one passenger doubled the length of the stop. Had the car been full, the stop could have been quadrupled in length. The deficiency of the majority's view would be even clearer in a case in which a driver had been stopped pending the investigation of a full carload—or vanload—of his passengers.

My dissent is perfectly consistent with *Arizona v. Johnson*, 129 S. Ct. 781 (2009). The Supreme Court in that case affirmed the three principles that I believe control here: First, "[f]or the duration of a traffic stop . . . a police officer effectively seizes 'everyone in the vehicle,' the driver and all passengers," and the police are permitted to "detain an automobile and its occupants *pending inquiry into a vehicular violation*." *Id.* at 784 (emphasis added). Second, "[a]n officer's inquiries into matters unrelated to the justification for the traffic stop . . . do not convert the encounter into something other than a lawful seizure, *so long as those inquiries do not measurably extend the duration of the stop*." *Id.* at 788 (emphasis added). And third, the rule of *Terry* applies: in order to conduct a more intrusive investigation of a passenger, such as a frisk, "just as in the case of a pedestrian reasonably suspected of criminal activity,

3

the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous." *Id.* at 784.

Although a few casual questions to a driver may not "measurably" prolong an otherwise lawful stop, and thus may not constitute an additional seizure—*see, e.g.*, *United States v. Turvin*, 517 F.3d 1097 (9th Cir. 2008); *United States v. Mendez*, 476 F.3d 1077 (9th Cir. 2007)—a full-fledged, independent investigation of a passenger's background, such as the computer-based check of the National Crime Information Center database here, does "measurably" prolong a stop, *Johnson*, 129 S. Ct. at 788, and thus requires additional justification for continuing to detain the driver. The additional imposition on Evans was clearly "measurable": the police officers testified that the records check for the passenger took three to five minutes, and executing the arrest of the passenger took another two to three minutes. At the time when these events occurred, the officers had already confirmed the validity of Evans's license; all that was left to do was to issue her a ticket. Evans therefore would have been allowed to go on her way but for the additional investigation of her passenger. This case, at least, cannot be decided on the basis that the prolonged duration of the stop was not "measurable."

The majority argues that the additional seizure of Evans was lawful because "a police officer may lawfully request identification from a passenger" and because "[a]

4

police officer may . . . lawfully conduct a [suspicionless] check on the passenger using his or her identification."[2] But that analysis misses the point: it addresses whether the police could lawfully investigate Evans's passenger, not whether they could lawfully prolong the stop of Evans herself while doing so.

I therefore would hold that a detention of a driver for a "measurable" period of time, solely in order to investigate a passenger, constitutes an unlawful additional seizure of the driver. As a result, I would exclude the evidence obtained as the result of Evans's additional seizure, including the drug paraphernalia, drugs, credit cards and stolen mail and the fruits of the subsequent search of her home.

---

[2] The majority cites *United States v. Diaz-Castaneda*, 494 F.3d 1146 (9th Cir. 2007), for the latter proposition. It does not appear, however, that Diaz-Castaneda questioned whether the additional time he was detained pending the check was itself an unjustified seizure. In my view, it may well have been. More important is that Diaz-Castaneda was a passenger, not the driver. Even if *Diaz-Castaneda* stood for the proposition that a *passenger*'s detention may be prolonged while the police conduct a check of his record, it would not be relevant to the question whether a *driver*'s detention may also be prolonged.