**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Alfred GARCIA–RIVERA,**
**Defendant–Appellant.**

**No. 02–10423.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 11, 2003.

Filed Dec. 29, 2003.

Fredric F. Kay, Federal Public Defender, and Michael D. Gordon, Assistant Federal Public Defender, Phoenix, AZ, for the Defendant–Appellant.

Paul K. Charlton, United States Attorney, Michael T. Morrissey and Joan G. Ruffennach, Assistant United States Attorneys, Phoenix, AZ, for the Plaintiff–Appellee.

Before BEEZER and FISHER, Circuit Judges, and ENGLAND, JR.* District Judge.

BEEZER, Circuit Judge:

Alfred Garcia–Rivera appeals the district court's judgment and sentence for possession of a firearm by a prohibited possessor, in violation of 18 U.S.C. § 922(g)(1). We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm in part, reverse in part and remand for a new trial.

## I

Garcia–Rivera was prohibited from possessing firearms because of a previous criminal conviction. On June 7, 2001, police officers pulled Garcia–Rivera over for driving a motor vehicle with a cracked windshield. Upon activating the police car lights, the officers observed Garcia–Rivera make a "furtive movement," as if reaching for something or putting something down. Garcia–Rivera failed to produce a driver's license, vehicle registration, or proof of insurance. Garcia–Rivera stated to the officers that he had been convicted of armed

* The Honorable Morrison C. England, Jr., United States District Judge for the Eastern District of California, sitting by designation.

robbery. The officers performed a pat down of Garcia–Rivera, ran a records check, and asked for consent to search the vehicle.

After obtaining consent, the officer searched the vehicle and found a .25 caliber shell casing on the floor and a .25 caliber semi-automatic Lorcin handgun in the seat. The firearm was loaded with a magazine containing five rounds of ammunition. The firearm was located in an eight to ten-inch tear in the seat, and near the driver's right leg. The barrel was facing down, such that if a person reached in, their hand would be on the black grips of the firearm. Garcia–Rivera spontaneously stated that the firearm was not his.

After receiving *Miranda* warnings, Garcia–Rivera told the officers that the firearm belonged to his girlfriend's sister, but that he fired shots on an Indian reservation about a week after the firearm was purchased.[1] The officer assumed that Garcia–Rivera was referring to target shooting. Garcia–Rivera acknowledged that he knew he was not allowed to possess any firearms.

The complaint alleged that Garcia–Rivera violated 18 U.S.C. § 922(g)(1) "[o]n or [b]etween May 19, 2001 and June 7, 2001." The original indictment was subsequently and timely filed. A superseding indictment alleged a violation of 18 U.S.C. § 922(g)(1) with a time frame of "[o]n or between May 19, 2001 and June 7, 2001."[2]

Aware of possible confusion, the court instructed the jury with respect to the date or dates on which the offense was alleged to have occurred. The instruction was as follows:

> In order for the defendant to be guilty of the offense charged you must find beyond a reasonable doubt that the possession occurred:
>
> (a) uninterrupted between May 19, 2001 and June 7, 2001; or
>
> (b) about a week after the purchase of the firearm, or
>
> (c) on June 7, 2001
>
> and you must unanimously agree that the possession occurred during (a) above, or on (b) or (c) above.

Defense counsel objected to the instruction because the jury could convict based on the reservation possession that took place about a week after the purchase of the firearm. Such a conviction would be based solely on an uncorroborated admission. Defense counsel also objected to the three different time frames during which the possession might be found. The district court gave the instruction.

Following a guilty verdict, defense counsel requested that the court poll the jury to determine which date or incident the jury used to find Garcia–Rivera guilty. The court declined.

## II

On appeal, Garcia–Rivera argues that the officer impermissibly expanded the scope of his stop, that the district court erred by instructing the jury it could convict based on Garcia–Rivera's reservation conviction where there was no evidence of *corpus delicti*, that the superseding indict-

---

**1.** The firearm was purchased on May 19, 2001.

**2.** The superseding indictment read:
On or between May 19, 2001 and June 7, 2001, in the District of Arizona, defendant ALFRED GARCIA RIVERA, having been previously convicted ... of Armed Robbery, and

... Robbery and Theft, felonies punishable by imprisonment for a term exceeding one year, did knowingly receive and possess a Lorcin .25 caliber handgun ... which firearm had been shipped and transported in interstate and foreign commerce. In violation of Title 18, United States Code, Section 922(g)(1).

ment violated the Speedy Trial Act because it asserted a new charge, and that the superseding indictment was duplicitous.[3]

◼ We review *de novo* Garcia–Rivera's argument that the scope of the vehicle stop exceeded the permissible scope of the traffic violation. *United States v. Perez*, 37 F.3d 510, 513–14 (9th Cir.1994).

◼ "Questions asked during an investigative stop must be reasonably related in scope to the justification for their initiation." *Id.* at 513 (internal quotation marks omitted). An officer may, however, broaden the line of questioning if there are additional particularized and objective factors arousing suspicion. *Id.*

The stop in this case was properly initiated for driving a motor vehicle with a cracked windshield. A.R.S. § 28–957.01; *State v. Vera*, 196 Ariz. 342, 996 P.2d 1246, 1247–48 (Ct.App.1999).

Upon activating the lights in the police vehicle, the officers observed Garcia–Rivera make a "furtive movement," leaning forward as if reaching for something or putting something down. The movement prompted one officer to warn the other that the defendant was reaching, indicating a need for extra care and the possibility that there may be weapons in the vehicle.

◼ In addition to his peculiar behavior, Garcia–Rivera failed upon request to produce a valid license, vehicle registration or proof of insurance. Inability to provide

proof of registration gives rise to suspicion of a stolen vehicle. *Perez*, 37 F.3d at 514. Garcia–Rivera also stated to the officers that he had a prior felony conviction for armed robbery.

◼ Given Garcia–Rivera's furtive movement and inability to provide any valid documentation, the officer properly expanded the scope of the stop beyond the cracked windshield violation. *See id.* at 513; *cf. United States v. Chavez–Valenzuela*, 268 F.3d 719, 724–26 (9th Cir.2001) (extended detention and inquiry following a routine traffic stop was unreasonable where there were no objective and particularized factors arousing the officer's suspicion other than the defendant's nervousness). The officer patted down Garcia–Rivera for weapons, performed a records check and asked for consent to search the vehicle. The expanded scope of the stop was permissible, as well.

The district court correctly denied the suppression motion.

### III

We asked the parties to address whether the district court's instruction to the jury on the issue of possession violated the constitutional requirement of a unanimous verdict. Garcia–Rivera raised the issue only indirectly in his briefs.[4]

◼ We review the district court's formulation of jury instructions for abuse of discretion.[5] *United States v. Hicks*, 217

---

3. We do not address Garcia–Rivera's arguments regarding *corpus delicti,* duplicity, or the Speedy Trial Act. These issues are reserved for a new trial.

4. Although Garcia–Rivera raised the issue in the context of his argument that the indictment was duplicitous, he did not argue the existence of an independent constitutional violation.

5. At oral argument, the government argued that we should instead review the district court's jury instructions for plain error because Garcia–Rivera failed to object to the instructions at trial. *See United States v. Franklin*, 321 F.3d 1231, 1240 (9th Cir.2003) (stating that where a defendant does not object to jury instructions at trial, this court reviews defendant's claims for plain error). Although the government is correct that Garcia–Rivera did not argue specifically that the

F.3d 1038, 1045 (9th Cir.2000). "In reviewing jury instructions, the relevant inquiry is whether the instructions as a whole are misleading or inadequate to guide the jury's deliberation." *United States v. Frega,* 179 F.3d 793, 806 n. 16 (9th Cir.1999) (citing *United States v. Moore,* 109 F.3d 1456, 1465 (9th Cir.) (en banc), *cert. denied,* 522 U.S. 836, 118 S.Ct. 108, 139 L.Ed.2d 61 (1997)).

An appellant has the right to a unanimous jury verdict under Article III, sec. 2 and the Sixth Amendment to the United States Constitution. *United States v. Frega,* 179 F.3d 793, 810 (9th Cir.1999) (citing *United States v. Gordon,* 844 F.2d 1397, 1400–01 (9th Cir.1988)); *see also United States v. Echeverry,* 719 F.2d 974, 975 (9th Cir.1983) (discussing importance of specific unanimity instruction to avoid jury confusion), *modifying* 698 F.2d 375 (9th Cir. 1983).

■ We hold that the district court's jury instructions were unconstitutional under either an abuse of discretion or plain error standard of review. We need not decide the appropriate standard of review where, as here, a party's objection to the instructions at trial was based on a different theory than that raised by the court on appeal.

■ The district court's instruction on possession attempted to provide guidance on the issue of unanimity, stating that "you must unanimously agree that the possession occurred during (a) above, *or* on (b) *or* (c) above." (Emphasis added.) The district court's phrasing, however, was fatally ambiguous. The jury could have concluded that they were required to decide unanimously only that possession occurred during *any* of the three times enumerated, not that they had to unanimously agree on

jury instructions violated his right to an unanimous verdict, Garcia–Rivera did object to the

which one. With this understanding, the jury could have convicted, for example, even though four jurors thought possession took place uninterrupted between May 19, 2001 and June 7, 2001, four jurors thought that possession occurred about a week after the purchase of the firearm, and four jurors thought possession took place on June 7, 2001. The district court's failure to poll the jury to determine which date or incident the jury used to find Garcia–Rivera guilty resulted in a questionable verdict. We hold that a unanimous verdict is required to affirm the judgment and sentence imposed by the court. Garcia–Rivera is entitled to a new trial.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

formulation of the instructions insofar as they reflected a duplicitous indictment.