**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

JOGA SINGH JOHAL,
*Defendant-Appellant.*

No. 03-30579

D.C. No.
CR-02-00214-FVS

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Fred L. Van Sickle, Chief Judge, Presiding

Argued and Submitted
January 10, 2005—Seattle, Washington

Filed August 30, 2005
Amended November 9, 2005

Before: Mary M. Schroeder, Chief Judge, Susan P. Graber
and Raymond C. Fisher, Circuit Judges.

Opinion by Judge Fisher

15243

**COUNSEL**

Sheryl Gordon McCloud, Law Office of Sheryl Gordon McCloud, Seattle, Washington, for the defendant-appellant.

Russell E. Smoot, Assistant United States Attorney, Spokane, Washington, for the plaintiff-appellee.

Allen R. Bentley, Law Office of Allen R. Bentley, Seattle, Washington, for amicus curiae, National Association of Criminal Defense Lawyers.

## ORDER

Appellee's motion to modify the court's decision, filed October 18, 2005, is **GRANTED.**

The opinion filed August 30, 2005, is amended in its entirety. The Clerk is instructed to file the amended opinion concurrently with this order.

No further petitions for panel rehearing or petitions for rehearing en banc will be considered by the court.

---

## OPINION

FISHER, Circuit Judge:

Joga Singh Johal ("Johal") appeals his conviction for selling and possessing large quantities of over-the-counter cold pills containing the ingredient pseudoephedrine "knowing or having reasonable cause to believe" that they would be used to manufacture methamphetamine, an illegal substance under 21 U.S.C. § 841(c)(2). Johal argues that § 841(c)(2) impermissibly imposes criminal liability without a mens rea requirement and that it mandates that the illegal substance actually be produced, foreclosing his conviction under a sting operation. Johal also alleges that the jury instructions failed to ensure a unanimous verdict and that the district court should have found him eligible for a sentence reduction because of his acceptance of responsibility.

We reject Johal's contention that a "reasonable cause to believe" standard, as construed and applied here, permits a defendant to be convicted without a showing of any criminal intent. Instead, the standard incorporates both subjective and objective considerations to ensure the defendant had a sufficiently "guilty mind" in violating the statute. We further hold

that a conviction under the statute does not require that the illegal drug actually be manufactured. We also conclude that the trial court did not err in its jury instructions or in denying Johal a reduction for acceptance of responsibility.

**I.**

Johal is the owner of a grocery business in Spokane, Washington, called "J&K Gas & Grocery". He invested in the store in 1995, some 10 years after he emigrated to the United States.

Beginning in the winter of 2001, the Drug Enforcement Agency ("DEA") began surveilling Johal's grocery store and a number of other convenience stores in the area. The DEA suspected that grocery store owners were selling excessive quantities of pseudoephedrine to individuals, who then used the ingredient to make methamphetamine.

Pseudoephedrine is a chemical ingredient in a number of cold medicines that can be purchased over-the-counter without a prescription. However, pseudoephedrine, when extracted from cold pills and mixed with other chemicals, is also used to manufacture methamphetamine. Certain brands of pseudoephedrine pills, including Action brand, facilitate the process of extraction because they do not have a coating on them.

Johal carried Action brand pseudoephedrine. At some point, he stopped stocking Action cold pills on the shelves because he said people were stealing them, and instead began keeping the medicine behind the counter and in the back room of the store.

The government indicted Johal based on a series of transactions in which he sold large amounts of Action cold pills to real or ostensible customers. On March 7, 2002, he sold 61 boxes of Action to P.H., who had agreed to participate in a

DEA undercover sting operation against Johal's store in exchange for having criminal charges against her dropped. P.H. entered the store and bought three boxes while a DEA Task Force Officer ("DEA Officer") — working undercover — waited in a car outside the store. P.H. left the store and then re-entered with the DEA Officer. In the next half hour, the DEA Officer and P.H. each made multiple three-box purchases. The DEA Officer asked Johal if they could buy more. The DEA Officer testified that he told Johal he wanted a case of Action because he was a cook and wanted to make "crystal," a shorthand reference to crystal methamphetamine. Johal told the two to return to the store later that evening. They returned after the store closed, and Johal sold P.H. 40 more boxes of Action.

The second controlled purchase occurred on March 13, 2002, by DEA informant D.W. Just a week earlier, D.W. had purchased from Johal's store a case of matches, which have red phosphorous tips that also are used in methamphetamine production. After that transaction, DEA agents pulled D.W. over in his car and found methamphetamine and other ingredients used to make the drug. D.W. agreed to cooperate with the DEA, and the next week he purchased a case (144 boxes) of Action from Johal for $1500. During the March 13 purchase, after D.W. paid the money, Johal told him to go to the back storeroom and wait. D.W. said another store employee put the pills in a "Mike's Hard Lemonade" box and put ice on top of the boxes of Action. Johal also told D.W. he had special-ordered matches and asked if D.W. wanted to buy them.

Earlier that same evening, by coincidence, a third party not working for the DEA, R.H., bought from Johal's store $950 worth of Action that R.H. had ordered in advance. DEA agents arrested R.H. as he was driving away from the store.

DEA agents amassed other corroborating evidence from transactions they observed and from their search of the store

pursuant to a federal warrant. In a superseding indictment, the government charged Johal with two counts of distribution and one count of possession of a listed chemical in violation of 21 U.S.C. § 841(c)(2).

The first trial ended with a hung jury. One issue the first jury grappled with in its deliberations was the sufficiency of evidence needed to meet the "reasonable cause to believe" intent standard. Johal was retried and convicted on all counts. At sentencing, the district court judge granted Johal a downward departure but denied him an adjustment based on acceptance of responsibility. Johal timely appealed. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## II.

Johal contends that 21 U.S.C. § 841(c)(2) impermissibly criminalizes conduct without imposing a mens rea requirement. We review de novo the proper interpretation of a statute. *United States v. Odom*, 329 F.3d 1032, 1034 (9th Cir. 2003). In determining what mental state is required to prove a violation of the statute, we look to its words and the intent of Congress. *See United States v. Nguyen*, 73 F.3d 887, 890 (9th Cir. 1995). In doing so, we construe the statute "in light of the background rules of the common law in which the requirement of some *mens rea* for a crime is firmly embedded." *Staples v. United States*, 511 U.S. 600, 605 (1994) (citation omitted) (noting that the existence of a mens rea is the rule rather than the exception in Anglo-American criminal jurisprudence); *see Nguyen*, 73 F.3d at 890 (emphasizing the "fundamental principle that a person is not criminally responsible unless 'an evil-meaning mind' accompanies 'an evil-doing hand' " (quoting *Morissette v. United States*, 342 U.S. 246, 251 (1952))).

[1] Section 841(c)(2) punishes

Any person who knowingly or intentionally —

(2) possesses or distributes a listed chemical *knowing, or having reasonable cause to believe*, that the listed chemical will be used to manufacture a controlled substance except as authorized by this subchapter.

(Emphasis added.) Pseudoephedrine is a listed chemical under the statute, 21 U.S.C. § 802(34)(K); but it is also a common ingredient in nonprescription cold medicines. Johal, supported by amicus curiae the National Association of Criminal Defense Lawyers, argues that the statute converts the legitimate sale of decongestants containing pseudoephedrine into a criminal act, putting unwitting store clerks at risk of going to prison simply for selling legal cold medications. He asserts this problem arises because "reasonable cause to believe" calls for interpreting what a reasonable person objectively would have known and done under the circumstances, imposing liability without any showing of the defendant's *actual* criminal intent.

**[2]** We reject Johal's argument because the statute does impose a mens rea requirement, as indicated in our previous decision in *United States v. Kaur*, 382 F.3d 1155, 1157 (9th Cir. 2004), a case arising out of the same DEA operation that led to Johal's arrest. There, we evaluated — albeit under an abuse of discretion standard — a jury instruction identical to the one given here that defined "reasonable cause to believe" in § 841(c)(2) as

> to have knowledge of facts which, although not amounting to direct knowledge, would cause a reasonable person knowing the same facts, to reasonably conclude that the pseudoephedrine would be used to manufacture a controlled substance.

*Id.* at 1156.

**[3]** Relying on *Kaur*, we hold that "reasonable cause to believe," in the context of § 841(c)(2), requires that a defendant subjectively know facts that either cause him or would cause a reasonable person to believe that the ingredients are being used to produce illegal drugs. This standard limits the likelihood that a defendant will be prosecuted for mere inadvertent conduct and is consistent with the longstanding principle presuming a mens rea requirement for criminal activity. *See Nguyen*, 73 F.3d at 890-91.[1]

**[4]** We also reject Johal's argument that the "reasonable cause to believe" standard requires proving actual, subjective knowledge of the purchaser's intended illegal use of the pills. Such a reading would be redundant because the statute already provides for conviction based on a defendant's actual knowledge of the intended illegal use. *See Kaur*, 382 F.3d at 1157 (noting that "the statute clearly presents knowledge and reasonable cause to believe as two distinct alternatives; reasonable cause to believe would be superfluous if it meant knowledge"). However, reasonable cause to believe is not purely objective, but turns on *the facts actually known by the defendant* in a particular case — facts from which the jury can infer that any reasonable person in the defendant's position would have had to know that the ingredients were being bought to make illegal drugs. As a practical matter, therefore, the differences between actual and constructive "knowledge" under the statute are not substantial. *See United States v. Saffo*, 227 F.3d 1260, 1268-69 (10th Cir. 2000) (holding that the "reasonable cause to believe" standard in § 841(c)(2) "requires scienter to be evaluated through the lens of this particular defendant, rather than from the [perspective] of a

---

[1]Section 841(c)(2) is unlike the statutes at issue in *Nguyen* or in *Staples v. United States*, 511 U.S. 600, 605 (1994), neither of which specified a mens rea requirement at all. Here, we need not read a mental state requirement into the statute, because it already limits criminal punishment to those who acted "knowing or having reasonable cause to believe" that illegal activity was afoot.

hypothetical reasonable man" and likening the standard to actual knowledge); *Stoianoff v. Montana*, 695 F.2d 1214, 1221 (9th Cir. 1983) (holding, in construing a drug paraphernalia statute, that "the fact that a defendant reasonably should have known something is established in substantially the same manner as actual knowledge").

**[5]** The government presented evidence from which the jury could find that Johal had a sufficient mens rea to violate the statute. The jury heard testimony about the various sales and Johal's own statements and conduct in the course of those transactions suggesting that Johal knew (or surely should have known) the proposed illegal use of the pseudoephedrine pills. He clearly was aware of the sales of Action in bulk quantities to repeat purchasers (the DEA agent and informants) and to R.H.; and the DEA Officer specifically told Johal that he was going to make "crystal." Johal's own behavior — such as concealing the packages in a box and having employees hand them to customers in the back room — was strong circumstantial evidence that Johal knew he was selling Action for an illicit use. At the very least, the circumstances of these sales would have alerted a reasonable person that the Action pills were being bought to make methamphetamine, not to cure runny noses. The evidence was thus sufficient to show that Johal had the requisite criminal intent to violate the statute.

### III.

Johal claims that the statute requires the actual production of methamphetamine as an element of the offense. He argues that because he was indicted during two sting operations — neither of which resulted in the actual manufacture of an illegal drug — there is insufficient evidence to sustain his conviction.

**[6]** The text of § 841(c)(2) requires that the defendant know or have reasonable cause to believe that the chemical he sells "*will be used* to manufacture" a controlled substance.

(Emphasis added.) The district court interpreted this phrase to require only that the defendant believe such production would occur, not that the ingredients actually be used to make drugs. The jury instruction specifically stated that "the government does not have to prove that any pseudoephedrine actually was used to manufacture a controlled substance."

**[7]** We agree with the district court's reading of the statute. The commission of the crime — the actus reus — occurs at the moment a defendant possesses or distributes a listed ingredient while knowing or having reasonable cause to believe the chemical will be used to make drugs. Thus, a defendant violates the statute based on his understanding that he or she is contributing to the production of illicit drugs, even if the drugs ultimately are not made. *See United States v. Prather*, 205 F.3d 1265, 1269 (11th Cir. 2000) (holding that the plain language of the statute indicates that "Congress did not intend to require proof that the controlled substance had actually been manufactured"); *United States v. Green*, 779 F.2d 1313, 1319 (7th Cir. 1985) (holding that proof of the actual manufacture of drugs using the prohibited chemical was not necessary since the statute required knowledge or a reasonable cause to believe that the manufacturing of the drugs *will* in the future come to pass). Actual production may very well bolster the circumstantial evidence of a defendant's awareness of his or her participation in an illegal activity, but it is not compelled by a plain reading of the statute.

## IV.

Johal challenges the jury instructions for failing to ensure a unanimous verdict on one of the two counts. Johal was indicted for (and the jury instructions charged him with) the sale of Action for the making of methamphetamine on March 13, 2002 (Count II). There were two separate transactions on that day, however. The first occurred when Johal sold drugs to R.H., the third party who was apprehended leaving Johal's store with a large quantity of pre-ordered Action. Later that

day, DEA informant D.W. purchased a case of pills from Johal.

The jury instructions did not distinguish between the two sales, but required the jury only to find beyond a reasonable doubt "that on or about March 13, 2002, the Defendant knowingly distributed pseudoephedrine" with the "knowledge or reasonable cause to believe that it will be used to manufacture a controlled substance." The district court also gave a general unanimity instruction, telling the jury that "a verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree thereto. A verdict must be unanimous." The instructions alerted the jury that "[t]he Defendant is not on trial for any conduct or offense not charged in the indictment" and that it may consider evidence of other acts "only as it bears upon the Defendant's intent, knowledge, motive, opportunity, and absence of mistake to commit the crimes charged and for no other purpose."

Johal did not raise below his objection that the district court failed to instruct the jury that it had to agree unanimously on the same sale of the two transactions that occurred on March 13. Nor did Johal request a polling of the jury to determine which transaction formed the basis of each juror's guilty verdict. We, therefore, review his claim for plain error and conclude that the district court's instructions were not plainly erroneous. *See United States v. Franklin*, 321 F.3d 1231, 1240 (9th Cir.) (noting that plain error requires an (1) error, (2) that is plain and (3) that affects substantial rights and concluding that the given jury instructions did not meet those conditions), *cert. denied*, 540 U.S. 858 (2003).

Johal cites *United States v. Garcia-Rivera,* 353 F.3d 788 (9th Cir. 2003), but that case is distinguishable. There the district court instructed the jury that to find the defendant guilty it had to find beyond a reasonable doubt that possession occurred: "(a) uninterrupted between May 19, 2001 and June

7, 2001; or (b) about a week after the purchase of the firearm, or (c) on June 7, 2001." *Id.* at 790. The court further instructed that the jury "must unanimously agree that the possession occurred during (a) above, *or* on (b) *or* (c) above." *Id.* at 792 (emphasis in the original). We found the phrasing "fatally ambiguous. The jury could have concluded that they were required to decide unanimously only that possession occurred during *any* of the three times enumerated, not that they had to unanimously agree on which one." *Id.* (emphasis in the original); *see also United States v. Echeverry*, 698 F.2d. 375, 377-78 (9th Cir. 1983), *amended by* 719 F.2d 974 (per curiam) (reversing the defendant's conviction where jurors were instructed they could convict if they found the existence of a conspiracy for "some period of time" within the six months covered in the indictment, because different jurors may have concluded that the defendant committed different acts).

**[8]** The concern that jurors may have convicted Johal, even though they did not agree on which of the two transactions actually occurred on March 13, is not material. Johal does not dispute that he sold large quantities of pseudoephedrine to both R.H. and D.W. on the day in question. Rather, the conviction turned on whether Johal had the requisite knowledge that the sales of Action were for the production of illegal drugs. The jurors could properly consider the evidence from both sales in deciding that Johal had the intent to commit the crime.[2] *See United States v. Ferris*, 719 F.2d 1405, 1407 (9th Cir. 1983) (rejecting the claim that a unanimity instruction must be tailored to the particular charges in a case where "the various acts indicating knowing possession were not inconsistent with each other; and even if one set of jurors might have focused on one part of the transaction while another set focused upon a different part, it does not follow that either set

---

[2]Our consideration of the jury unanimity challenge might have been different had the sales at issue occurred over the course of a more extended period of time or had the occurrence of the sales been disputed.

of jurors were in disagreement with the other"). Accordingly, there was no plain error in the jury instructions regarding the March 13 count.

## V.

**[9]** Johal contends that the district court erred in denying him a reduction of his sentence for acceptance of responsibility, a claim we review for clear error. *See United States v. Fleming*, 215 F.3d 930, 939 (9th Cir. 2000). At sentencing, Johal acknowledged selling large amounts of pseudoephedrine but stated that he "did not know that this was a violation of a federal law." He argues that because he admitted the actus reus of the crime — distributing the chemical ingredient — he should have been eligible for a sentence reduction. However, our case law makes clear that the reduction is inappropriate where the defendant does not admit that he or she had the intent to commit the crime. *See id.* (upholding district court's refusal to grant reduction where the defendant attempted to accept responsibility but denied the intent element of the offense); *United States v. Ing*, 70 F.3d 553, 556 (9th Cir. 1995) (holding that district court clearly erred in denying reduction where the defendant raised an entrapment defense, but "admitted his conduct and his intent throughout"); *United States v. Burrows*, 36 F.3d 875, 883 (9th Cir. 1994) (holding that the defendant was not entitled to adjustment where during and after trial he maintained that he lacked mens rea). Johal did not admit that he had the intent to distribute the chemical-containing cold pills for the purpose of making illegal drugs. Accordingly, the court did not clearly err by denying him a sentence adjustment based on his acceptance of responsibility.

**[10]** Nonetheless, the Sentencing Guidelines are no longer mandatory, and we cannot determine from the record whether the sentence imposed would have been materially different had the district court known that the Guidelines were advisory. *See United States v. Ameline*, 409 F.3d 1073, 1074 (9th

Cir. 2005) (en banc). Accordingly, the district court should reconsider Johal's sentence in light of *Ameline*.

## VI.

The conviction is **AFFIRMED** and the case is **REMANDED** for reconsideration of Johal's sentence.