**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Mieko Choniece JACKSON,
Defendant–Appellant.**

No. 07–50481.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 2, 2009.

Filed Oct. 22, 2009.

Peter A. Hernandez, Esquire, Michael J. Raphael, Esquire, Assistant U.S., Office of the U.S. Attorney, Los Angeles, CA, for Plaintiff–Appellee.

David James Zugman, Burcham & Zugman, San Diego, CA, for Defendant–Appellant.

Before: RYMER, GRABER and BEA, Circuit Judges.

## MEMORANDUM *

Mieko Jackson appeals her conviction and sentence on charges that she conspired to distribute pseudoephedrine knowing and having reasonable cause to believe that it would be used to manufacture methamphetamine, and to aid and abet the manufacture of methamphetamine (count one); conspiracy to launder money (count five); and money laundering (counts eight-eleven). She raises a number of issues, none of which requires reversal except for sufficiency of the evidence to sustain her conviction on count one. We reverse as to that count, which moots her claims of instructional error and the sentencing issues that pertain only to count one, and otherwise affirm.

Jackson argues there is no evidence that she knew or intended that pseudoephedrine was to be used to manufacture methamphetamine. Under *United States v. Johal*, 428 F.3d 823 (9th Cir. 2005), the standard for conviction is "reasonable cause to believe" that the pseudoephedrine would be used to make an illegal drug. *Id.* at 826. The government points out that Jackson transported and unloaded pseudoephedrine, converted cash into money orders, and allowed cash to be deposited into her account. While the jury could find beyond a reasonable doubt that Jackson knew she was helping Mizyed handle pseudoephedrine, and that she was receiving a large amount of cash for it—thus that it was being used for some illicit activity—there is no evidence from which the jury could reasonably infer that she knew of any connection between pseudoephedrine and methamphetamine. *Cf.,*

*e.g., Johal,* 428 F.3d at 826 (noting that the defendant knew the undercover agent wanted pseudoephedrine because "he was a cook" and "wanted to make crystal"). The government did not ask for a "deliberate ignorance" instruction, and none was given. Accordingly, we conclude that the evidence was insufficient to show that Jackson conspired with Mizyed and others to distribute pseudoephedrine having reasonable cause to believe that it would be used to manufacture methamphetamine. Her conviction and sentence on count one are, therefore, reversed.

To the extent Jackson claims that instructional error on the conspiracy count spilled over to the jury's determination of the proper level of scienter for money laundering, we disagree. Jackson doesn't challenge the money laundering instructions themselves. These instructions are not plainly erroneous, as money laundering only requires knowledge of proceeds from *some* unlawful activity—not activity that is methamphetamine-related. 18 U.S.C. § 1956(a)(1). Jackson's sufficiency challenge fails given testimony by Wallace, Sarabia, and Mizyed that she knew the money received from Mizyed involved the proceeds of unlawful activity, and that the money he gave her to obtain money orders and pay his bills was an attempt to conceal the source of those funds.

Jackson also faults introduction of extrajudicial facts related to the guilty pleas of Mirlo Paez–Calderon and Kimberly Easterling. Jackson did not object in district court, so our review is for plain error. Even assuming *Crawford* error,[1] reversal is not indicated. Evidence of Jackson's guilt, apart from what Paez–Calderon and Easterling had to say, is strong: Mizyed

---

* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

1. *Crawford v. Washington*, 541 U.S. 36, 59, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

had told Jackson he was hiding money, and she shuffled money he gave her knowing it was the proceeds of some kind of unlawful activity.

In light of our reversal on count one, it doesn't matter whether the district court improperly denied Jackson the benefit of the safety valve or whether the special jury verdict form was infirm, as Jackson claims, for both are germane only to the conviction and sentence on that count. We remand to the district court with instructions to vacate the conviction and sentence on count one, and to resentence on the remaining counts.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.

BEA, J., dissenting.

I respectfully dissent as to the reversal of Mieko Jackson's conviction on count one for conspiring to distribute pseudoephedrine (a controlled substance) knowing and having reasonable cause to believe that it would be used to manufacture methamphetamine, and for aiding and abetting the manufacture of methamphetamine. The evidence here was sufficient for the jury to infer beyond a reasonable doubt that Jackson had reason to know the pseudoephedrine she helped Galeb Mizyed distribute was being used to manufacture methamphetamine by Miguel Sarabia.

The testimony of Mizyed, Sarabia, and David Wallace established the following: Jackson helped Mizyed haul a truck full of pseudoephedrine across the United States from where he purchased it in Canada. Jackson saw numerous, large boxes of pseudoephedrine stored in the garage at Mizyed's house, where she lived with him. Jackson also paid for storage units to house the pseudoephedrine. Jackson helped Mizyed deliver the pseudoephedrine to Sarabia. Jackson knew Mizyed was doing business with Sarabia, and was present at some of the sales transactions. She knew Sarabia was paying Mizyed thousands of dollars for the pseudoephedrine, including $250,000 on one occasion when Jackson was present. On that occasion, Sarabia saw Mizyed share approximately $50,000 of the proceeds with Jackson.

Finally, although Mizyed testified he never directly told Jackson Sarabia used the pseudoephedrine to manufacture methamphetamine, he said it was because he "didn't need to" tell her.

From this evidence, the jury was entitled to infer Jackson knew she was aiding and abetting Mizyed in distributing pseudoephedrine to Sarabia, and that Sarabia then used the pseudoephedrine to manufacture methamphetamine. Accordingly, I dissent on the reversal of Jackson's conviction on count one. In all other respects, I concur in the memorandum disposition affirming Jackson's conviction.