**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



FILED

JUN 17 2014

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 13-50103 |
| Plaintiff - Appellee, | D.C. No. 2:11-cr-00955-GAF-1 |
| v. | |
| STEVEN MARK PYBRUM, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Central District of California
Gary A. Feess, District Judge, Presiding

Argued and Submitted May 13, 2014
Pasadena, California

Before:  WARDLAW and FISHER, Circuit Judges, and DAWSON, District
Judge.[**]

Steven Pybrum appeals his jury conviction and sentence on four counts of

willfully subscribing to false income tax returns under 26 U.S.C. § 7206(1).  We

affirm.

---

[*]This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

[**]The Honorable Kent J. Dawson, United States District Judge for the
District of Nevada, sitting by designation.

**1.** Sufficient evidence supported Pybrum's convictions for willfully subscribing, under penalty of perjury, four IRS Form 1040s that he knew were materially false as to the gross receipts from his accounting practice, his royalty income, and his income from the Foundation for Harmony and Happiness (FFHH). *See United States v. Boulware*, 384 F.3d 794, 810-12 (9th Cir. 2004). Considering the evidence in the light most favorable to the prosecution, a rational jury could find that Pybrum's accounting business remained materially unchanged both before and after the formation of FFHH, and that, as a trained CPA, Pybrum knew he had to report gross receipts from his accounting business on his Schedule C but failed to do so. *See United States v. Stone*, 770 F.2d 842, 845 (9th Cir. 1985) ("[A] defendant's] consistent pattern of unreporting . . . income is sufficient to infer willfulness."); *United States v. Marabelles*, 724 F.2d 1374, 1379 (9th Cir. 1984) ("[W]illfulness may be inferred by the trier of fact from all the facts and circumstances of the attempted understatement of tax"). Moreover, a rational jury could find that Pybrum willfully failed to report expenditures that FFHH made on his behalf as income on his Form 1040, and that, of the income Pybrum did report, he willfully and falsely characterized nearly all of this income as "royalty" income.

**2.** The district court's "assignment of income" instruction was not erroneous. *See United States v. Garcia-Rivera*, 353 F.3d 788, 791-92 (9th Cir.

2

2003).  The instruction did not impermissibly presuppose that Pybrum assigned

any income nor did it misstate the law.  Rather, it described the legal principles that

would apply if the jury found that the evidence supported the government's theory.

By its terms, the instruction applied only to "[a] person engaged as a sole

proprietor in a business or profession."  The following instruction accurately stated

how a nonprofit like FFHH was required to report receipts generated by its

activities, consonant with Pybrum's defense theory.  The assignment of income

instruction did not relieve the government of the need to prove willfulness beyond

a reasonable doubt, because it did not rest on a debatable proposition of tax law,

*see Lucas v. Earl*, 281 U.S. 111 (1930), and the instructions as a whole confirmed

the government's burden, *see Garcia-Rivera*, 353 F.3d at 792.  Pybrum's

remaining contentions of instructional error are without merit.

**3.**  The district court did not abuse its discretion by admitting evidence of (1)

alleged false statements Pybrum made during an interview with an IRS agent; (2)

individuals whose names were used in FFHH's incorporation documents; and (3) a

car loan application.  Pybrum made his lack of intent to violate the tax laws a

centerpiece of his defense, and FFHH played a central role in the alleged illegal

scheme.  The admitted evidence, which "came in the course of the conduct with

which [Pybrum] was charged," was "probative of his consciousness that his

3

conduct was illegal." *United States v. Ramirez-Jiminez*, 967 F.2d 1321, 1327 (9th Cir. 1992). The statements in the loan application were directly relevant to proving that Pybrum was receiving income from his accounting business even after the formation of FFHH.

**4.** Pybrum waived any argument that the prosecution was time-barred by failing to raise it below. *See United States v. Lo*, 231 F.3d 471, 480-81 (9th Cir. 2000). Even if the argument were preserved, the supplemented record on appeal demonstrates that the statute of limitations was tolled by mutual agreement of the parties, making the prosecution timely.

**5.** Pybrum did not specifically move to compel the production of the grand jury transcripts in the district court, but even if he had preserved his request, any nonstructural error in the grand jury proceedings (like that alleged here) was rendered harmless by the petit jury's guilty verdicts at trial. *See United States v. Navarro*, 608 F.3d 529, 539-40 (9th Cir. 2010). The district court did not abuse its discretion by denying Pybrum's request for the Special Agent's Report (SAR), because Pybrum failed to demonstrate why it was discoverable material. *See United States v. Williams*, 547 F.3d 1187, 1202 (9th Cir. 2008). He also fails to demonstrate why the production of the SAR "would have created a 'reasonable probability of a different result,'" particularly when he already had in his

4

possession all of the exhibits that constituted the factual information in the report." *United States v. Jernigan*, 492 F.3d 1050, 1053 (9th Cir. 2007) (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)).

**6.** The district court did not violate Pybrum's rights under the Confrontation Clause by restricting the scope of his cross-examination of Agent Wing for bias. *See United States v. Larson*, 495 F.3d 1094, 1100-03 (9th Cir. 2007). Wing's purportedly inflated calculation of Pybrum's tax liability and awareness of Pybrum's success in challenging prior IRS civil audits was of limited relevance for demonstrating whether Wing harbored bias, risked confusing the jury and "in no way went to the heart of why [Wing] was testifying or whether he was lying." *United States v. Hayat*, 710 F.3d 875, 898 (9th Cir. 2013). Defense counsel was afforded ample opportunity to probe Wing's propensity for bias through cross-examination on a host of other subjects.

**7.** Pybrum's challenges to his sentence are without merit. First, enhancement of Pybrum's sentence for obstructing justice was not erroneous, *see* U.S. Sentencing Guidelines Manual (U.S.S.G.) § 3C1.1, because the district court explicitly found that Pybrum willfully made false statements to Agent Wing that had a material impact on Wing's investigation of FFHH. Although the civil IRS audit took place before a criminal investigation had begun, "obstruction during an

5

IRS audit justifies enhancing a defendant's sentence for obstruction 'during the course of the investigation.'" *United States v. Yip*, 592 F.3d 1035, 1042 (9th Cir. 2010) (quoting U.S.S.G. § 3C1.1 (2001)).

Second, the district court did not plainly err in finding that Pybrum's use of FFHH to funnel funds was a sophisticated means of hiding assets and transactions in a nonprofit shell. U.S.S.G. § 2T1.1(b)(2); *see United States v. Jennings*, 711 F.3d 1144, 1147-48 (9th Cir. 2013). Relatedly, because Pybrum used his accounting skills to create FFHH and manipulate his own tax reporting "in a manner that significantly facilitated the commission or concealment of the offense," U.S.S.G. § 3B1.3 & cmt. n.4, the special skill enhancement was appropriate.

Third, applying both the sophisticated means and special skill enhancements to account for similar behavior did not amount to impermissible double counting, because "each invocation of the behavior serves a unique purpose under the Guidelines." *United States v. Holt*, 510 F.3d 1007, 1011 (9th Cir. 2007) (quotation omitted); *see United States v. Thornton*, 511 F.3d 1221, 1227-28 (9th Cir. 2008) (applying this standard). The special skills enhancement recognizes that persons who use "their special skills to facilitate significantly the commission or concealment of a crime . . . generally are viewed as more culpable." U.S.S.G.

6

§ 3B1.3 cmt. background.  The sophisticated means enhancement, in contrast, addresses "unusually sophisticated efforts" that "decrease the likelihood of detection and therefore warrant an additional sanction for deterrence purposes." U.S.S.G. § 2T1.1 cmt. background.  The district court reasonably found that Pybrum's conduct fell within the scope of both enhancements.

**AFFIRMED**.