[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-10140
Non-Argument Calendar

_____

D.C. Docket No. 1:17-cr-20582-JEM-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

RAKEEM ASAAD DAVIS,
a.k.a. Poo Poo,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 12, 2019)

Before MARCUS, ROSENBAUM, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Rakeem Davis appeals his conviction and sentence for unlawful possession of a firearm and ammunition.  He argues that he is entitled to a new trial for two reasons: (1) the district court failed to conduct an inquiry into his counsel's pretrial motion to withdraw; and (2) the court failed to give a special instruction to the jury to ensure unanimity with respect to the factual grounds of conviction.  He also challenges his sentence, arguing that the court procedurally erred by failing both to verify that he and his counsel had reviewed the presentence investigation report and to calculate the guideline range.  After careful review, we reject these arguments and affirm.

## I.

Davis was indicted in August 2017 for possession of a firearm and ammunition after a felony conviction, in violation of 18 U.S.C. § 922(g)(1).  The indictment charged possession of a Browning 9mm handgun and ten rounds of 9mm ammunition on July 29, 2017.  Davis pled not guilty.

About two weeks before the trial was scheduled to start in late October 2017, Davis's counsel, Ruben Garcia, who had been appointed in early September 2017 under the Criminal Justice Act, 18 U.S.C. § 3006A, moved to withdraw.  Counsel sought withdrawal due to "unreconcilable differences about the conduct of the Defendant's defense and because Mr. Davis does not trust counsel and he wishes to proceed to trial."  Counsel explained that he had met with Davis four times and had gone over the evidence, jury instructions, voir dire questions, the government's

2

intent to introduce Rule 404(b), Fed. R. Evid., evidence, and a plea offer and proposed factual proffer. At the last conference, according to counsel, Davis had "angrily ended" the conversation and asked for Garcia to withdraw. Counsel wrote that "Davis does not believe undersigned counsel is acting in Defendant's best interest and believes that counsel wants the Defendant to plead guilty." Nevertheless, counsel stated that he had informed the government that Davis was going to trial.

The district court denied the motion a few days later at a status conference. The court stated that it had reviewed the motion and the reasons given therein. The court then addressed Davis as follows:

> Mr. Davis, I just want to tell you, you can replace him with any lawyer you want if you can hire a lawyer, but you got a competent lawyer. Mr. Garcia is a competent lawyer that has been tried and tested. We have - - he has tried many cases in front of me. He is a competent lawyer. He may not be telling you what you want to hear, but I bet he's telling you what the law is. And if you find another lawyer, I want to tell you that he better be ready to go to trial next week because that's when the trial is set. Excuse me. A week from Monday.
>
> And whether -- it seems to be the motion du jour over at the prison now that a week or two before trial, they say oh, I don't like my lawyer anymore, he's not giving me good advice and I'm not going to take it anymore, I want a new lawyer and then try to get a continuance. I don't know for what reason, but it's not happening. The case is going to trial.

3

Without asking to hear from Davis or Garcia, the court found that Garcia was "more than capable of representing [Davis]" in this "very simple case" and denied the motion to withdraw.

The case proceeded to trial. A confidential informant ("CI") testified that he met up with Davis and Emmanuel Duncanson on July 28. According to the CI, Duncanson asked the other two if they had a gun, and Davis said he could get one. The CI further testified that Davis gave directions to an apartment. On the way, Duncanson announced that he wanted to kill a man named Ike for interfering with his sister's drug business. At the apartment, the CI attested, Davis showed Duncanson two handguns and a rifle, which were lying on a bed. Duncanson selected one of the handguns, and Davis carried it out of the house. The CI then drove Duncanson and Davis to an apartment complex where they spotted Ike. The CI explained that when Davis refused to shoot at Ike, Duncanson grabbed the gun and fired several shots out of the car window, which missed, as the CI sped away from the scene.

At 2:00 a.m. the next morning, July 29, federal law-enforcement agents executed a search warrant at the apartment where Davis had retrieved the gun before the shooting. Davis and a woman were present in the apartment. The search revealed two handguns: (1) a Browning 9mm loaded with three rounds of ammunition; and (2) an SCCY 9mm loaded with seven rounds of ammunition.

4

According to the CI, both guns were present at the apartment before the shooting, but only the SCCY 9mm was used in the shooting. A federal law-enforcement agent testified that Davis was not charged with possession of the SCCY 9mm because there was no evidence it had moved in interstate commerce. The parties stipulated that Davis was not permitted to possess a firearm due to a prior felony conviction.

Based upon the parties' joint proposed jury instructions, the district court informed the jury that "[t]he sole count of the indictment charges the Defendant with being a felon in possession of a firearm and ammunition," and that the jury would be given a copy of the indictment. The court instructed the jury that the offense had two elements: (1) knowing possession of a firearm or ammunition in or affecting interstate commerce, (2) that occurred after having been convicted of a felony. The court cautioned the jury that Davis was "on trial only for the specific crime charged in the indictment" and that it was the jury's job "to determine from the evidence in this case whether the Defendant is guilty or not guilty of that specific crime." The court further advised that the "verdict, whether guilty or not guilty, must be unanimous. In other words, you must all agree." Finally, when going over the general verdict form—which simply asked the jury to find whether Davis was guilty or not guilty—the court reiterated to the jury that the verdict needed to be unanimous. Defense counsel did not object to these instructions.

The jury unanimously found Davis guilty.

Davis's presentence investigation report ("PSR") recommended a total offense level of 24 and criminal-history category of V. This established a recommended guideline imprisonment range of 92 to 115 months. Davis did not file any objections. The government filed a sentencing memorandum.

The district court began sentencing by stating that it had reviewed the PSR, the government's sentencing memorandum, and the addendum to the PSR, and the court noted that no objections had been made. The court then asked the parties for their views on an appropriate sentence. The government asked for a sentence at the "high end of the guidelines," citing the seriousness of the offense conduct and Davis's substantial criminal history. Davis's counsel argued for a sentence at "the low end of the guidelines, 92 months," referencing the PSR and asserting that Davis's criminal history was due to drug abuse, lack of guidance, and other circumstantial factors. Davis personally requested 92 months.

The district court sentenced Davis to 100 months. The court explained that it believed Davis was "a danger to the community" but that it wanted to give Davis an opportunity to reform by sentencing him "toward the low end of the guideline range," though not "all the way down to 92." Davis did not raise any objections at sentencing. He now appeals.

**II.**

6

Davis first appeals the denial of his counsel's motion to withdraw, which we will characterize as a "substitution motion." Davis argues that the district court erred in failing to conduct an inquiry into why he wanted new counsel and that he was prejudiced by counsel's continued representation during trial.

Substitution motions must be decided "in the interests of justice," 18 U.S.C. § 3006A(c), a standard that "contemplates a peculiarly context-specific inquiry," *Martel v. Clair*, 565 U.S. 648, 663 (2012). In reviewing substitution motions, we consider several factors, including the timeliness of the motion; the adequacy of the court's inquiry into the merits of the motion; and the asserted cause for the motion, including the extent of the conflict or breakdown in communication between the defendant and his counsel. *Id.*; *United States v. Calderon*, 127 F.3d 1314, 1343 (11th Cir. 1997). "Because a trial court's decision on substitution is so fact-specific, it deserves deference[.]" *Martel*, 565 U.S. at 663–64. We may overturn it "only for an abuse of discretion." *Id.* at 664; *Calderon*, 127 F.3d at 1343.

The first factor—the timeliness of the motion—slightly favors denial. While counsel appears to have promptly moved to withdraw when asked by Davis, the substitution motion was filed just two weeks before the trial was scheduled to begin and after a continuance had already been granted. While we see nothing to indicate intentional delay, we also understand the court's concern about the potential for delay. *Cf. Robinson v. Boeing Co.*, 79 F.3d 1053, 1055 (11th Cir. 1996) ("Courts

7

have long accepted that resulting delay may justify the exercise of a trial judge's discretion to deny substitute counsel in the midst of litigation.").

The second factor—the adequacy of the court's inquiry—cuts in favor of Davis. As the Supreme Court has stated, "courts cannot properly resolve substitution motions without probing why a defendant wants a new lawyer." *Martel*, 565 U.S. at 664. The district court must engage in at least some inquiry about "the source and factual basis" of the defendant's dissatisfaction with an attorney, even if the judge is professionally acquainted with the attorney. *United States v. Young*, 482 F.2d 993, 995 (5th Cir. 1973)[1]; *see also Brown v. United States*, 720 F.3d 1316, 1336 (11th Cir. 2013) ("The trial court is obliged to explore the extent of the conflict and any breakdown in communication between the lawyer and the client."). Moreover, such "an on-the-record inquiry into the defendant's allegations 'permit[s] meaningful appellate review' of a trial court's exercise of discretion." *Martel*, 565 U.S. at 664.

The district court here addressed the substitution motion at a hearing and considered the reasons for withdrawal listed in the motion. But the court did not probe the extent of the conflict and any breakdown in communication, notwithstanding the court's professional familiarity with Davis's counsel or its

---

[1] This Court adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

doubts about the motivations behind the motion. *See Brown*, 720 F.3d at 1336; *Young*, 482 F.2d at 995.

Nevertheless, we do not believe that the district court's failure to probe more deeply is enough, on this record, to render the court's ruling an abuse of discretion. That's because Garcia, Davis's counsel, listed the reasons for withdrawal in the substitution motion, and the court reasonably could have concluded that further inquiry was unnecessary because the clearly listed reasons did not warrant substitution. *See McKee v. Harris*, 649 F.2d 927, 934 (2d Cir. 1981) ("If the reasons are made known to the court, the court may rule without more."); *cf. Young*, 482 F.2d at 995 (stating that inquiry is necessary when the defendant presents a "seemingly substantial complaint about counsel"). In other words, the third factor— the asserted cause for the motion—strongly favors denial of the motion.

"An indigent criminal defendant has an absolute right to be represented by counsel, but he does not have a right to have a particular lawyer represent him, nor to demand a different appointed lawyer except for good cause." *Thomas v. Wainwright*, 767 F.2d 738, 742 (11th Cir. 1985); *see United States v. Garey*, 540 F.3d 1253, 1263 (11th Cir. 2008) (*en banc*). Whether good cause exists "cannot be determined 'solely according to the subjective standard of what the defendant perceives.'" *Thomas*, 767 F.2d at 742 (quoting *McKee*, 649 F.2d at 932). For that

reason, "[a] defendant's general loss of confidence or trust in his counsel, standing alone, is not sufficient." *Id.*

Here, the substitution motion reveals little more than Davis's "general loss of confidence or trust in his counsel," Garcia. *Id.* According to the motion, the conflict between attorney and client was that Garcia wanted Davis to accept the government's plea offer, but Davis wanted to proceed to trial. As a result, Davis did not trust Garcia and did not believe that Garcia was acting in his best interests. In resolving the motion, the court understood that the nature of the conflict stemmed from Davis's dissatisfaction with Garcia's plea advice, *see* Doc. 85 at 2 ("He may not be telling you what you want to hear, but I bet he's telling you what the law is."), which alone does not constitute good cause, *see McKee*, 649 F.2d at 932–33 (defendant's dissatisfaction with counsel's "frank advice" to plead guilty does not amount to good cause). And the record reflects that Garcia respected Davis's desire to proceed to trial and was prepared for it. Because the clearly listed reasons in the substitution motion did not indicate that Davis could establish good cause, we cannot say that the court abused its discretion in denying the motion without a probing inquiry.

Nevertheless, we acknowledge that our review is inhibited by the district court's lack of a formal inquiry. *See Martel*, 565 U.S. at 664. All we have to go on is the substitution motion itself. And the motion may not fully convey "the extent

of the conflict and any breakdown in communication," which is why further inquiry by the court is generally necessary. *See Brown*, 720 F.3d at 1336.

However, while the district court should have probed the matter more deeply at the status hearing, and even assuming the court erred in failing to do so, we conclude that the failure to conduct an inquiry in this case was harmless.[2] *See McKee*, 649 F.2d at 933 ("[W]hile [the trial judge] should have conducted a formal inquiry, the failure to do so in this case was harmless."). In his briefing on appeal, Davis does not suggest any other reason beyond those listed in the motion that would have been elicited by a formal inquiry. His reply brief merely states that he "lacked confidence in his attorney's ability or willingness to advocate effectively on his behalf," which is not sufficient to warrant substitution. *See Thomas*, 767 F.2d at 742. Nor can we infer a breakdown in communication from the trial errors allegedly committed by counsel—asking a particular question on cross-examination and failing to request a special verdict—since they do not appear to stem in any way from the dispute that precipitated the substitution motion. Aside from those

---

[2] Our harmlessness inquiry focuses on the state of facts at the time of the substitution motion. While Davis argues that the failure to inquire into a substitution motion warrants a new trial, a remedy some courts have granted in the past, the Supreme Court has now stated that "[t]he way to cure that error" is to remand to the district court "to decide whether substitution was appropriate at the time of [the substitution motion]." *Martel*, 565 U.S. at 666 n.4 (noting that the court of appeals had "ordered the wrong remedy even assuming the District Court had abused its discretion in denying Clair's substitution motion without inquiry"). Because the remedy for a lack of inquiry would be remand for consideration of the substitution motion, we must consider whether Davis could show on remand that substitution was appropriate at the time the motion was filed.

11

unrelated errors, Davis has pointed us to nothing in the record that would suggest that the conflict between Davis and Garcia affected Davis's trial defense. Accordingly, despite the court's failure to conduct an appropriate inquiry, we cannot conclude that Davis was harmed by that failure.

We therefore affirm the district court's denial of the substitution motion.

### III.

Davis next argues that the district court plainly erred by failing to instruct the jury that it was required to reach a unanimous decision about which, if any, firearm or ammunition Davis possessed, and where and when any possession occurred. He says that jurors could have made conflicting findings on these points, in violation of his Sixth Amendment right to a unanimous jury verdict, because the evidence showed possession of guns or ammunition at three separate points: (1) before the shooting, when the guns were at the apartment; (2) during the shooting, when the uncharged gun was used; and (3) after the shooting, when both guns and all associated ammunition were found in separate locations in the apartment.

We review this argument for plain error because Davis did not object to the jury instructions before the district court. *United States v. Felts*, 579 F.3d 1341, 1343 (11th Cir. 2009). Under the "plain error" standard, the defendant must demonstrate that (1) an error occurred, (2) the error was plain, and (3) the error affected substantial rights. *Id.* at 1344. "An error is not plain unless it is contrary to

explicit statutory provisions or to on-point precedent in this Court or the Supreme Court." *United States v. Hoffman*, 710 F.3d 1228, 1232 (11th Cir. 2013) (quotation marks omitted). Further, "[j]ury instructions will not be reversed for plain error unless the charge, considered as a whole, is so clearly erroneous as to result in a likelihood of a grave miscarriage of justice, or the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Starke*, 62 F.3d 1374, 1381 (11th Cir. 1995) (quotation marks omitted).

"[A] jury in a federal criminal case cannot convict unless it unanimously finds that the Government has proved each element." *Richardson v. United States*, 526 U.S. 813, 817 (1999). But "a federal jury need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element, say, which of several possible means the defendant used to commit an element of the crime." *Id.* For instance, jury disagreement about whether a robber used a knife or a gun—a disagreement about means—would not matter so long as the jury "unanimously concluded that the Government had proved the necessary related element, namely, that the defendant had threatened force." *Id.*

Relying on *Richardson*'s distinction between elements and means, several of our sister circuits have concluded that jury unanimity is not required as to the particular firearm or ammunition possessed for purposes of § 922(g). *E.g.*, *United States v. Pollock*, 757 F.3d 582, 587–88 (7th Cir. 2014); *United States v. Talbert*,

501 F.3d 449, 451–52 (5th Cir. 2007); *United States v. DeJohn*, 368 F.3d 533, 542 (6th Cir. 2004); *United States v. Verrecchia*, 196 F.3d 294, 298–301 (1st Cir. 1999). These circuits have reasoned that unanimity is not required because the particular firearm or ammunition possessed is not an element of the crime under § 922(g) but instead the means used to satisfy the element of "any firearm or ammunition." *E.g.*, *DeJohn*, 368 F.3d at 541–42.

Here, Davis has not established plain error. Davis has identified no "on-point precedent in this Court or the Supreme Court" holding that a special unanimity instruction is required in the circumstances presented by this case. *See Hoffman*, 710 F.3d at 1232. Nor is it obvious or clear that the matters he wished to have decided by special verdict are elements of the offense requiring unanimity, as opposed to "possible sets of underlying brute facts [which] make up a particular element" for which unanimity is not required. *Richardson*, 526 U.S. at 817. For example, numerous circuits have held that jury unanimity is not required as to the particular firearm or ammunition possessed. *Pollock*, 757 F.3d at 587–88; *Talbert*, 501 F.3d at 451–52; *DeJohn*, 368 F.3d at 542; *Verrecchia*, 196 F.3d at 298–301. Accordingly, even assuming the court erred, the error was not "plain."

Davis's reliance on *United States v. Garcia-Rivera*, 353 F.3d 788 (9th Cir. 2003), is unavailing. First, that decision is from the Ninth Circuit, so it cannot establish a "plain" error in this Circuit. *See Hoffman*, 710 F.3d at 1232.

14

Second, even if *Garcia-Rivera* were somehow binding here, it is not on point. The indictment in *Garcia-Rivera* charged possession of a firearm over a time frame between May 19, 2001, and June 7, 2001. 353 F.3d at 790. At trial, the court instructed the jury that, to find the defendant guilty, it must find that the possession occurred (a) uninterrupted between May 19, 2001, and June 7, 2001; (b) about a week after the purchase of the firearm; and (c) on June 7, 2001. *Id.* The court told the jury that it "must unanimously agree that the possession occurred during (a) above, or on (b) or (c) above." *Id.* The Ninth Circuit held that this instruction was "fatally ambiguous" because the "jury could have concluded that they were required to decide unanimously only that possession occurred during any of the three times enumerated, not that they had to unanimously agree on which one." *Id.*

No similar ambiguity is present here. The indictment charged possession of a single firearm and ammunition on a specific date, July 29, which was after the shooting. And the district court's unanimity instructions, though general, were not "fatally ambiguous" like the choose-your-own-adventure instructions in *Garcia-Rivera*. The court here repeatedly instructed the jury that its verdict must be unanimous and the jurors "must all agree." So even assuming there were multiple possible sets of facts on which Davis's conviction could have been based, jurors would have understood from the court's instructions that they were required to "all agree" on which set of facts grounded the conviction. The instructions, considered

15

as a whole, were not "so clearly erroneous as to result in a likelihood of a grave miscarriage of justice" or to "affect the fairness, integrity, or public reputation of judicial proceedings." *Starke*, 62 F.3d at 1381.

For these reasons, Davis has not shown that the district court plainly erred in failing to give a specific instruction on unanimity.

## IV.

Finally, Davis contends that the district court procedurally erred at sentencing in two ways:  (1) failing to verify that Davis and his counsel had reviewed the PSR and addendum, as required by Rule 32, Fed. R. Crim. P.; and (2) failing to calculate the applicable guideline range at sentencing.  We review these arguments for plain error because they were raised for the first time on appeal.  *See United States v. Vandergrift*, 754 F.3d 1303, 1307 (11th Cir. 2014) (applying plain-error review where the defendant failed to object to a claimed procedural error).

Sentencing courts "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which is "the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).  The failure to calculate the guideline range is a "significant procedural error." *Id.* at 51.  Before calculating the guideline range, the district court "must verify that the defendant and the defendant's attorney have read and discussed the [PSR] and any addendum to the report." Fed. R. Crim. P. 32(i)(1)(A).  No specific inquiry is required for the

16

district court to meet its obligation under Rule 32, as long as the record indicates that counsel reviewed the PSR with the defendant. *See United States v. Aleman*, 832 F.2d 142, 144 & n.6 (11th Cir. 1987) (applying a prior version of Rule 32(i)(1)(A)).

Here, Davis has not established plain error. Even assuming that the district court erred by failing to verify that Davis and his counsel had reviewed the PSR and by failing to state the guideline range on the record at sentencing, Davis has not shown that these errors affected his substantial rights. *See Felts*, 579 F.3d at 1343.

First, the sentencing transcript indicates that Davis's counsel had reviewed the PSR. After the court noted that there were no objections to the PSR, counsel argued for a sentence at "the low end of the guidelines, 92 months," which was the range recommended by the PSR, and he cited facts from the PSR in support of that request. Although the court did not verify that Davis personally had reviewed the PSR, nothing in the record indicates that sentencing would have gone any differently had the court personally questioned Davis.

Second, the record is clear that the district court implicitly adopted the PSR's guideline range of 92 to 115 months. And both parties framed their arguments based on that range. The government asked for a sentence at "the high end of the guidelines in this case[,] which is 115 months." Davis's counsel argued for a sentence at "the low end of the guidelines, 92 months." The district court then sentenced Davis "toward the low end of the guideline range," but not "all the way down to 92."

Because there was no confusion about the guideline range on which the sentence was based, Davis has not shown that the court's failure to state the guideline range on the record affected his substantial rights.

## V.

We affirm Davis's conviction and sentence.

**AFFIRMED.**